**In re INDEMNITY INSURANCE COMPANY OF NORTH AMERICA (Formerly Stuyvesant Insurance Company).**

Supreme Court of Tennessee.

March 3, 1980.

E. E. Edwards, III, Nashville, for appellant.

Robert A. Grunow, Sr. Asst. Atty. Gen., for appellee; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

## OPINION

HARBISON, Justice.

This cause was instituted by a show-cause order issued by the judges of the Criminal Court of Davidson County, Tennessee. The only such order contained in the record was addressed to an individual, Mr. Chris Hood, directing him to appear before the judges to show cause why his privilege to act as a professional bail bondsman should not be suspended or revoked. Later, according to an order filed in the record after the case had reached the appellate courts, Mr. Hood voluntarily surrendered such privileges.

Apparently at the same time similar show-cause orders must have been issued to two other entities, since the remainder of the record on appeal refers to them and there is little further reference to Mr. Hood. One of these entities was Jefferson Bonding Company, a Tennessee corporation, qualified to write bonds as a professional bondsman in the Davidson County Criminal Courts pursuant to T.C.A. §§ 40–1401 to 1416. Mr. Hood was vice president of this company. Its president and sole stockholder was Carroll Stewart, a resident of Atlanta, Georgia. His is the only testimony included in the record on appeal. After this case reached the appellate courts, Jefferson Bonding Company also voluntarily surrendered its privileges as a bondsman. Accordingly, further note need not be taken of Mr. Hood or of Jefferson Bonding Company, except as may be incidentally required in disposing of the remaining issues. The other respondent to a show-cause order was Stuyvesant Insurance Company, a guaranty company qualified as a professional bail bondsman under the foregoing statutes and also under T.C.A. §§ 56–1401 to 1415 governing fidelity and bonding companies and providing for their regulation by the Commissioner of Insurance.

An evidentiary hearing was held before the three Criminal Court judges sitting en banc on October 16, 1978. At the conclusion of the hearing both respondents Jefferson Bonding Company and Stuyvesant Insurance Company were directed to file in evidence the total amount of outstanding bonds which they had in force in Davidson County. Presumably this information was subsequently filed, although it is not included in the record on appeal. Likewise omitted are other exhibits which were introduced into and received in evidence at the en banc hearing, these being a complete financial statement of Stuyvesant Insurance Company and a list of all bonds issued by respondents and conditional forfeitures taken against them in Shelby County, Tennessee. The reason for these omissions is not clear, but the incomplete state of the record all but forecloses appellate review of the factual conclusions stated by the judges in an order which was entered by them on November 9, 1978—over three weeks after the evidentiary hearing.

In that order they stated:

"It appears to the Court that the property pledged by both the Jefferson Bonding Company and Stuyvesant Insurance Company is grossly inadequate to secure the large amount of bail bonds outstanding in the Criminal Court of Davidson County, Tennessee."

The judges accordingly ordered that both respondents be prohibited from executing

further bonds for a period of sixty days or "until such time as sufficient property is pledged by both companies to satisfy the Court in the event of forfeitures they can be satisfied." The clerk of the court was directed to compile a list of all bail bonds on which the respondents were sureties, including a list of forfeitures. The record on appeal does not include such list, if it was furnished.

Both Jefferson Bonding Company and Stuyvesant Insurance Company appealed from the order of November 9, 1978, but, as noted above, Jefferson Bonding Company later surrendered its privilege to act as a bail bondsman.

■ As the case reached the Court of Criminal Appeals, according to the briefs filed before that court, only one issue was assigned and briefed—that is, the legal authority of the Criminal Court judges to require the posting of additional assets locally by an insurance company otherwise shown to be in good standing with the Commissioner of Insurance and to have complied with the provisions of T.C.A. §§ 56–1401 to 1415. In this Court, however, appellant has attempted to raise an additional issue—that is, the factual question of whether or not the evidence was sufficient to justify the findings and conclusions of the trial judges. Without a complete transcript of the evidence introduced before those judges, together with all exhibits which pertained to the issues, we are simply unable to review this question of fact. It is incumbent, of course, upon an appealing party to furnish an appellate court with a record sufficient to permit review of all issues raised on appeal. The record filed in this case was sufficient to present the legal issue. In the event of the resolution of that issue against appellant, however, the record is insufficient to warrant reversal of the trial judges on the facts, since it is apparent that they had before them evidence not included in the transcript.

■ The Court of Criminal Appeals concluded that the judges of the Criminal Court did have legal authority to investigate the financial status of all of the respondents before them and to require the posting of additional assets locally by the insurance company before it would be permitted to continue to write bail bonds. One of the members of the Court of Criminal Appeals dissented, stating that the evidence was insufficient to demonstrate the necessity for the action taken by the trial judges. However the dissenting opinion did not note the incomplete state of the record referred to above.

After careful consideration of the record and briefs of counsel, we are of the opinion that the Court of Criminal Appeals was correct with respect to the legal issue. Prior to 1976 guaranty companies which had qualified with the Commissioner of Insurance and had complied with the requirements of T.C.A. §§ 56–1401 to 1415 were specifically exempted from any other requirements of the statutes governing professional bail bondsmen. Prior to 1976, T.C.A. § 40–1402 provided:

"None of the provisions of this chapter shall apply to insurance companies subject to inspection, regulation and control by the commissioner of insurance of the state and by such commissioner duly authorized to write bonds in this state."

The foregoing provision was repealed, however, in 1976. By virtue of the repeal, the provisions of T.C.A. § 40–1401 to 1416 apply "to all professional bondsmen," and by amendment these statutes were specifically made applicable "to agents of insurance companies making appearance bonds in the criminal trial or lower courts and in the Court of Criminal Appeals and Supreme Court of Tennessee." T.C.A. § 40–1402.

Under the terms of T.C.A. § 40–1405, the judge of any court in which professional bondsmen execute criminal bonds

". . . is empowered to inquire at any time into the solvency of any bondsman and to investigate and determine the value of his assets and extent of his liabilities . . . ." T.C.A. § 40–1405.

Further, such bondsmen are required under T.C.A. § 40–1403 to furnish detailed periodic reports to the clerk of the courts of each

county in which the bondsman is furnishing bail or making bonds.

Although the show-cause order in the record does not so state, it is apparent that it was issued and the subsequent en banc hearing was held pursuant to T.C.A. § 40–1405. Appellant does not deny the authority of the trial judges to hold such hearing or to make inquiries into the status of professional bondsmen.

T.C.A. § 40–1406 provides that a court, after its investigation, may prohibit a bondsman from executing bonds or other undertakings as surety until the court shall become satisfied that the bondsman has complied with the provisions of the statute or the orders of the court and the court shall impose any other reasonable limitation on the total liability of the bondsman's undertakings in said court if

(a) the court finds the bondsman is insolvent or is not financially able to discharge the obligations of his liabilities as surety; or

(b) that he has failed, refused and neglected to make the semi-annual report of his assets and liabilities required by statute; or

(c) that the reports made and filed have been false; or

(d) that the bondsman has failed to furnish the court with information touching upon solvency, when called for.

■ The order issued by the judges on November 9, 1978, did not quote from T.C.A. § 40–1406 or literally find a violation of its provisions, but it did state that the court found that the property "pledged by both Jefferson Bonding Company and Stuyvesant Insurance Company is grossly inadequate to secure the large amount of bail bonds outstanding in the Criminal Court of Davidson County, Tennessee."

This constitutes a finding of fact. In our opinion it is a finding within the parameters of T.C.A. § 40–1406. In the absence of a complete bill of exceptions we must assume that it was supported by sufficient material evidence.

■ It is true, as pointed out by the appellant, that insurance companies which qualify under T.C.A. §§ 56–1401 to 1415 are required to post assets with the Department of Insurance in this state, or with similar officials in other states, which are subject to being reached by local courts to satisfy bail bond obligations. Ordinarily an insurance company which complies with these statutes should not be required to file additional assets with local courts in the absence of a finding by local judges of specific reasons therefor. We agree with counsel for appellant that the statutory scheme provided by the insurance laws ordinarily should afford sufficient ready, liquid assets to satisfy the obligations of an insurance carrier writing bail bonds. The comments of the local District Attorney in the present record to the contrary seem insufficiently considered and lacking in merit.

Nevertheless, in view of the 1976 amendment to the bail bond statutes, there can be no question, in our opinion, of the legal authority of local courts to require the posting of additional assets to secure bail bond obligations of any professional bondsman, insurance carrier or otherwise.

The specific reasons for the holding of the hearing in the present case are not clear. Apparently there had been informal conferences between the judges, the District Attorney General and counsel for the respondents prior to the hearing as to the issues which the judges wished to explore. Apparently there had also been previous hearings held by the judges with respect to the initial qualifying of Stuyvesant Insurance Company and Jefferson Bonding Company.[1] Either as a result of the present hearing or for other reasons which do not appear in the record, both Jefferson Bonding Company and Mr. Hood subsequently surrendered their privileges as professional bail bondsmen in Nashville.

■ Because the cases of Stuyvesant and Jefferson were heard together and a sharp

---

1. Bonds executed by qualified insurance companies are subject to approval by local courts and judges. T.C.A. § 56–1402. There is refer- ence in the transcript to an earlier hearing in which approval was given to Stuyvesant.

delineation of the assets and liabilities of each was not made, and because exhibits which were filed and considered were not included in the record on appeal, we are unable to say that the trial judges committed reversible error in the present case in entering their order of November 9, 1978. Nevertheless supervision of professional bail bondsmen is a continuing matter and one which may be considered by the local judges either upon their own motion or upon application of a bondsman at any time. Accordingly, rather than requiring that a more complete bill of exceptions be filed in the present case to give this Court an accurate record of the evidence which the trial judges had before them—in effect reproducing the financial condition of Stuyvesant Insurance Company as of October 16, 1978—we are of the opinion that this cause should be remanded to the Criminal Court of Davidson County, Tennessee, with leave given to appellant to make application to the Criminal Court judges for further consideration of their order and to enable it to present a more current appraisal of its financial assets and condition.

At the evidentiary hearing which was held in 1978, there was evidence that Stuyvesant Insurance Company was the largest bonding company of its type in the United States. There is testimony in the record that it had assets of sixty-two million dollars. Whether this refers to gross assets, however, or to net worth, apart from liabilities, fixed or contingent, we cannot ascertain in the absence of the financial statement which was filed in evidence. There was testimony also by Mr. Stewart that the Insurance Company of North America had acquired Stuyvesant and planned to infuse a great deal of additional capital into it. Apparently that acquisition did occur after this case reached the appellate courts. The name of the company has now been changed to Indemnity Insurance Company of North America.

At the evidentiary hearing in 1978 it was shown that Stuyvesant had outstanding bail bonds in Shelby County in the amount of $1,675,000 with bonds in the amount of $130,400 in conditional forfeiture status. The record is silent as to essential information upon which the Davidson County judges acted—that is, the amount of bonds outstanding and the state of their forfeiture in Davidson County. All that can be ascertained from the present record is that the judges found that there were a "large amount" of bail bonds so outstanding and that assets pledged by Jefferson and Stuyvesant were "grossly insufficient" to secure the same.

From the record, therefore, we simply cannot conclude as a matter of fact that the trial judges abused their discretion in requiring the deposit of additional assets, although we are constrained to have reservations about that requirement as to Stuyvesant in view of the undisputed fact that it was in good standing with the Commissioner of Insurance and had substantial assets on deposit in the Commissioner's Office. The record reveals that Jefferson had deposited locally some $10,000 in assets in Nashville and some $30,000 in Shelby County,[2] but the record is quite unclear as to whether those assets were available in satisfaction of bonds executed by Stuyvesant. Mr. Stewart testified that he and Jefferson were personally obligated to indemnify Stuyvesant against losses and that they had always paid any losses which occurred. He insisted, however, that most of the bonds were not actually executed by Jefferson and that they had been executed by him, his corporation and others as agents of Stuyvesant.

Under all of the circumstances, therefore, we are of the opinion that it would be improper for us to set aside the November 9, 1978, order of the Criminal judges, but we are of the opinion that the cause should be remanded to the Criminal Court of Davidson County, Tennessee, for such fur-

**2.** Mr. Stewart indicated that the amount of bonds Jefferson had outstanding in Memphis approached the "saturation point" with respect to the assets it had on deposit there, indicating that a ratio of ten times assets was the limit permitted in Shelby County. For this reason he commenced writing through Stuyvesant.

ther proceedings consistent herewith as may be deemed necessary and proper either by appellant, by the District Attorney General, or by the judges themselves. All costs are taxed to appellant.

BROCK, C. J., and FONES, COOPER and HENRY, JJ., concur.