# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## APRIL 1999 SESSION

FILED

August 17, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| IN RE: INTERNATIONAL FIDELITY | * | C.C.A. 03C01-9811-CR-00398 |
| INSURANCE COMPANY, NATIONAL | | |
| AMERICAN INSURANCE COMPANY, | * | Greene, Hamblen, Hancock, and |
| AND THE NATIONAL ASSOCIATION | | Hawkins Counties |
| OF BAIL INSURANCE COMPANIES, | * | |
| ON BEHALF OF ITS MEMBER | | |
| COMPANIES UNDERWRITING BAIL | * | Hon. James E. Beckner, Judge |
| BONDS IN THE THIRD JUDICIAL | | |
| DISTRICT, | * | (Order of the Criminal Court for the |
| | | Third Judicial District) |
| Appellants. | * | |

For Appellant:

John K. King
Lewis, King, Krieg, Waldrop & Catron, P.C.
P.O. Box 2425
Knoxville, TN  37901

Alan M. Parker
Lewis, King, Krieg, Waldrop & Catron, P.C.
P.O. Box 2425
Knoxville, TN  37901

For Appellee:

Paul G. Summers
Attorney General and Reporter
425 Fifth Avenue North
Nashville, TN  37243-0493

Ellen H. Pollack
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN  37243-0493

OPINION FILED: _____

REVERSED

NORMA MCGEE OGLE, JUDGE

## OPINION

The appellants appeal the entry of an order by the Criminal Court for the Third Judicial District,[1] requiring the deposit with the court of additional funds by all companies underwriting bail bonds in that district and imposing a cap upon the total amount of bail bonds which may be underwritten by any one company. The appellants present the following issue for our review: Whether the trial court's order was arbitrary and capricious, violating the appellants' substantive rights to a hearing on the merits of the trial court's action and a finding by the trial court of specific reasons therefor.

## I.  Factual Background

The limited record before this court[2] reflects that there are currently eighteen bail bond companies authorized to underwrite bail bonds in the Third Judicial District. In addition to securing bail bonds with real estate or other assets of the bail bond company itself, a local bail bond company can guarantee a bail bond through an insurance company. Under this arrangement, the local bail bond company, acting as an agent for the insurance company, pledges the assets of the insurance company as security on bail bonds. Apparently, at least one bail bond company in the Third Judicial District guarantees bail bonds through appellant insurance companies.

The record further reflects that the order which is the subject of this appeal stemmed from the trial court's concern that "the Insurance practice has

---

[1]The Third Judicial District encompasses Greene, Hamblen, Hancock, and Hawkins Counties.

[2]The record includes three orders by the trial court, dated October 15, 1998, December 28, 1998, and January 12, 1999, and an affidavit by appellants' counsel. The December and January orders and the affidavit were submitted to this court as attachments to the appellants' Motion for Stay Pending Appeal. This court stayed execution of the trial court's October and December orders pending the resolution of this appeal.

2

imbued Bonding Companies with no cap on bond writing and that is immensely irresponsible." The trial court was additionally concerned that insurance companies "have wide spread liability and are not easily held responsible or accountable to the Court." Accordingly, on October 15, 1998, the trial court entered an order requiring all bail bond companies in the Third Judicial District to deposit with the court a minimum amount of fifty thousand dollars ($50,000.00) for the purpose of securing outstanding bail bonds. According to the court's order, each company would be allowed to underwrite bail bonds amounting to ten times the deposit or five hundred thousand dollars ($500,000.00). A bail bond company could deposit more than fifty thousand dollars ($50,000.00), but could not underwrite bail bonds exceeding a total amount of one million dollars ($1,000,000.00). The order was to be effective on January 1, 1999,[3] and all bail bond companies were required to be in compliance with the trial court's order by that date. Each bail bond company would then be individually approved by order of the court. The October order applied both to bail bond companies underwriting bail bonds as agents of insurance companies and to private, non-insurance bail bond companies. The trial court noted:

> There will be no distinction between Bail Bond Companies that write with insurance and those that do not. Each company is obligated to secure the bonds. The primary obligation rests with the company and not the Insurance Indemnifier.

The appellant insurance companies filed an appeal of the order with this court on November 12, 1998. Thereafter, on December 28, 1998, the trial court entered another order, modifying the October order. In the December order, the trial court permitted insurance companies, licensed with the Tennessee Department of Commerce and Insurance, to underwrite bail bonds totaling two hundred thousand

---

[3]The trial court subsequently informed the appellants by telephone that the order would be effective January 15, 1999.

3

dollars ($200,000.00), without depositing additional security. The trial court acknowledged that insurance companies licensed to conduct business in Tennessee deposit assets with the Tennessee Commissioner of Commerce and Insurance for the purpose of securing the company's outstanding bonds and obligations in this state. The trial court also acknowledged that insurance companies generally possess assets exceeding those of private, non-insurance bonding companies. However, the trial court determined that these assets are not readily available to the court. Moreover, the court opined that the assets deposited with the Commissioner of Commerce and Insurance, when spread across the state, do not provide adequate security.

The record before this court includes an affidavit by the appellants' attorney stating that the appellants are insurance companies which were previously qualified to conduct business in the Third Judicial District and have been underwriting bail bonds in that district. Moreover, the appellants' attorney attested that the appellants have underwritten outstanding bail bonds in excess of two hundred thousand dollars ($200,000.00). Accordingly, pursuant to the trial court's orders, the appellants are automatically disqualified from underwriting bonds in the Third Judicial District, unless and until the appellants deposit additional security with the court.

In their brief, the appellants additionally assert that each appellant insurance company possesses a certificate of authority from the Tennessee Commissioner of Commerce and Insurance, reflecting each company's compliance with the insurance laws and regulations of Tennessee. Tenn. Code. Ann. § 56-2-102(a) (1997). See also Tenn. Code. Ann. § 56-15-101 to -115 (1997). According to the appellants, each company is solvent and has deposited one hundred

4

thousand dollars ($100,000.00) with the Tennessee Department of Commerce and Insurance. Moreover, the companies collectively maintain "hundreds of millions of dollars in assets and unassigned bona fide surpluses."

## II. Analysis

**A.    Bail Bonds**

Initially, we find it useful to review the nature of a "bail bond" and the relationship between a defendant, his surety, and the court in the bail bond context. Generally, a bail bond "is a contract between the government on the one side and accused and surety on the other, whereby the surety guarantees the appearance of the accused" in court. 8 C.J.S. Bail § 4 (1988). See also Tenn. Code. Ann. § 40-11-122 (1997).[4] The Tennessee Court of Appeals has also described a bail bond as

> an "undertaking by [a] surety, into whose custody [the] defendant is placed, that he will produce [the] defendant in court at a stated time and place." ... The defendant or principal is released from the custody of the law and placed in the custody of the surety. To ensure the diligence and attentiveness of the surety to its principal's timely appearance in court, the surety posts some manner of bond or security.
>
> ... Upon the non-appearance of the defendant, that bond is conditionally forfeited. T. C. A. §. 40-11-201. Since the surety is bound to produce its principal to fulfill its obligations as surety, a [conditional] judgment ... is immediately obtained against the surety in the amount of the bond. "[T]o notify the defendant and his sureties to show cause why such judgment shall not be made final," a writ of scire facias issues to set a date for a hearing on final forfeiture. T. C. A. §. 40-11-202. See T.C.A. §. 40-11-139.
>
> ... [B]y entering into the bail bond agreement and assuming custody of its principal, the surety submits itself to the in personam jurisdiction of the court ... .

Indemnity Insurance Company of North America v. Blackwell, 653 S.W.2d 262, 264

---

[4]A defendant may also post his own bail bond under Tenn. Code. Ann. § 40-11-118 (1997), depositing with the court a sum of money in cash equal to the amount of bail. However, the execution of a "'secured' appearance bond" is a more common practice. State v. Clements, 925 S.W.2d 224, 225 (Tenn. 1996).

(Tenn. App. 1983).  In this case, the insurance companies apparently act as sureties through an agent, a local bail bond company, and thereby subject themselves to the court's jurisdiction.

At issue in this case are the parameters of the court's authority to regulate the insurance companies acting as sureties through their agents in bail bond agreements.  In the Release from Custody and Bail Reform Act of 1978, the legislature explicitly set forth certain powers of a court to regulate professional bondsmen and other sureties.  Tenn. Code. Ann. § 40-11-101 to -405 (1997). Additionally, a trial court possesses inherent power to administer its affairs, including the right to impose reasonable regulations regarding bail bonds.  In re Hitt, 910 S.W.2d 900, 904 (Tenn. Crim. App. 1995); In re: International Fidelity Insurance Company, No. 03C01-9610-CR-00360, 1998 WL 597080, at *3 (Tenn. Crim. App. at Knoxville, September 10, 1998), perm. to appeal denied, (Tenn. 1999).  The appellants contend that the trial court exceeded any statutory or inherent authority by requiring the appellant insurance companies to submit additional security to the court without affording the appellants a hearing or making specific factual findings.

**B.     The Trial Court's Orders**

In In re: Indemnity Insurance Company of North America, 594 S.W.2d 705, 708 (Tenn. 1980), our supreme court observed that insurance companies in good standing with the Department of Commerce and Insurance should not be required to file additional assets with local courts in the absence of a finding by local judges of specific reasons therefor. The supreme court explained:

> We agree with counsel for appellant that the statutory
> scheme provided by the insurance laws ordinarily should
> afford sufficient ready, liquid assets to satisfy the
> obligations of an insurance carrier writing bail bonds.

Id.  Thus, in In re: International Fidelity Insurance Company, No. 03C01-9610-CR-

6

00360, 1998 WL 597080, at *3-4, while acknowledging the authority of a trial court to require insurance companies underwriting bail bonds in its district to deposit additional funds with the court, this court also concluded:

> [A] local rule of law that would require the deposit of additional funds before a petition to qualify could be heard would be null and void ab initio to the extent that it conflicts with the substantive right of the insurance company to have a hearing on the merits, and the right to be required to put up additional funds only upon a finding by the trial judge of specific reasons therefor.

Id.

The clear implication of both In re Indemnity Insurance Company of North America and In re: International Fidelity Insurance Company is that local rules requiring additional security from insurance companies are invalid to the extent that they are based upon broad assumptions about the adequacy of security provided by the insurance laws of this state.[5]  Yet, in this case, the trial court examined the statutory scheme provided by the insurance laws and arbitrarily determined that it was inadequate to afford sufficient ready, liquid assets to satisfy the obligations of the appellants.  On the basis of this conclusion, the trial court then adopted a local rule requiring all insurance companies, apparently without exception, to deposit additional security with the court.  The trial court adopted the local rule without making findings specific to the insurance companies conducting business in its district or problems experienced by the trial court in executing final judgments of

---

[5]In addition to requiring the deposit of security with the trial court, the October order imposed a cap on the amount of bail bonds that can be underwritten by any one bail bond company.  Both In re Indemnity Insurance Company of North America and In re: International Fidelity Insurance Company only addressed the former requirement.  However, we conclude that the substantive rights announced in those cases would apply equally to the imposition of caps on the total amount of bail bonds that can be underwritten by insurance companies in good standing with the Department of Commerce and Insurance.

forfeiture against appellant insurance companies.[6]

The appellants also contend that they were not afforded a hearing in this case. As noted above, the trial court's October order applies to all insurance companies without exception and, on its face, does not provide a hearing to insurance companies collectively or individually. However, the trial court stated in its January order, "This Court has never refused a hearing on these matters. This Court has required that instead of an oral hearing all matters be submitted in writing for a more efficient and better record."

Assuming that the appellants were permitted to make written submissions to the trial court, procedural due process may require the opportunity for an oral presentation to the decision maker if written submissions are inadequate to provide a party a fair hearing. See, e.g. 2 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law § 17.8, at 644-645 (2d ed. 1992). The form of the hearing required by due process will depend upon the balancing of competing interests. Mathews v. Eldridge, 424 U.S. 319, 333-335, 96 S.Ct. 893, 901-903 (1976). However, neither the supreme court nor this court relied upon principles of procedural due process in announcing the rights of insurance companies underwriting bail bonds.[7] Rather, as noted above, in In re: International Fidelity

---

[6]Although the October order was applicable to all bail bond companies, the record reflects that the trial court entered the order solely for the purpose of addressing its concerns about insurance companies. The record includes no expression of concern about private, non-insurance bail bond companies other than the trial court's desire to create a "level playing field" for all bail bond companies. Indeed, the trial court suggested in its January order that private, non-insurance bail bond companies were already effectively subject to limitations imposed by the October order.

[7]In contrast, in State v. AAA Aaron's Action Agency Bail Bonds, Inc., No. 01C01-9710-CR-00462, 1998 WL 670392, at *2 (Tenn. Crim. App. at Nashville, September 30, 1998), we concluded that, in authorizing any bail bond company to engage in the bail bond business, a court effectively grants a company a right to pursue that business. Thus, in addition to statutory mandates, procedural due process requires that a company be provided notice and the opportunity to be heard prior to the deprivation of its right to engage in the bail bond business. Id. at **3-4. Significantly, this court's opinion was not addressed solely to insurance companies underwriting bail bonds. Thus, depending upon the extent to which a local rule of court constituted a deprivation of a bail bond company's right to engage in the bail bond business, both insurance companies and private, non-insurance bail bond

<u>Insurance Company</u>, No. 03C01-9610-CR-00360, 1998 WL 597080, at *3-4, this court cited <u>In re Indemnity Insurance Company of North America</u> and concluded that insurance companies possess a *substantive* right to a "hearing on the merits." Presumably, this substantive right derives from the statutory scheme provided by the insurance laws. Neither the supreme court nor this court has addressed whether or not written submissions will satisfy this substantive right. Nevertheless, we submit that the appellants' substantive right to a hearing must at least be coextensive with minimum requirements of due process, providing the appellants a fair and reasonable opportunity to respond to the trial court's concerns. Assuming that the form of hearing should be decided according to a due process analysis, the record before this court is simply inadequate to conduct a thorough balancing of the competing interests.

In any case, regardless of the form of the hearing, <u>In re Indemnity Insurance Company of North America</u> and <u>In re: International Fidelity Insurance Company</u> appear to place the burden upon the trial court to justify a requirement of additional deposits by insurance companies with specific factual findings. The trial court does not state anywhere in the record that the appellant insurance companies have refused to provide any information requested by the court. The trial court simply failed to satisfy its burden.

Therefore, we vacate the October and December orders of the trial court. We additionally conclude that it is unnecessary to remand this case for a hearing. If the trial court believes that additional deposits by insurance companies in the Third Judicial District are required, we have already noted its inherent power to conduct a fair hearing, allowing the appellants an opportunity to respond to the

---

companies might be entitled to notice and a hearing pursuant to principles of due process.

9

court's concerns and, *upon specific findings*, impose reasonable regulations.

_____
Norma McGee Ogle, Judge

CONCUR:

_____
Jerry L. Smith, Judge

_____
Joe G. Riley, Jr., Judge

10