Brown Taylor, Judge of Part I, General Sessions Court of Davidson County, Tennessee, et al.

*v.*

R. B. Waddey and The Athens Bonding Company.

(*Nashville,* December Term, 1959.)

Opinion filed March 11, 1960.

ROBERT J. WARNER, JR., SHELTON LUTON and ELMER D. DAVIES, JR., Nashville, for plaintiffs in error.

HOOKER & HOOKER, Nashville, for defendants in error.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The five General Sessions Judges of Davidson County meeting *en banke* concluded that Waddey and the bonding company should be permanently suspended from writing bonds in the General Sessions Courts of Davidson County. To this action a common law petition for certiorari was granted by the Circuit Court wherein the petition was sustained because that court was of the opinion "the method by which bondsmen may be prohibited from doing business in any court has been covered and prescribed by statute, it is the opinion of this court that that method must be pursued. * * *" To this action of the Circuit Court the General Sessions Judges have duly perfected an appeal to this Court where able briefs have been filed and arguments had. We now, after reading these briefs and doing considerable independent research, are in a position to dispose of the questions here presented.

On May 13, 1959, one of the General Sessions Judges had notice served by the Sheriff on the appellee bondsman and bonding company to appear at a fixed place in the courthouse of Davidson County on May 20th at a fixed time "and then and there show cause why the order of November 12, 1958, approving the petition" etc. of the bonding company and its power of attorney, should not be revoked and canceled. On May 25th after the hearing, pursuant to this notice, the five Judges of the General Sessions Courts of Davidson County entered an order which among other things shows that "after the hearing of proof and the argument of counsel, it is an unanimous decision of the five Judges of the General Sessions Courts sitting *en banke* that the said Robert Waddey be permanently suspended from the writing of bonds in The General Sessions Court and it is, therefore, ordered,

adjudged and decreed that said Robert Waddey is from and after Friday, May 22, 1959, permanently suspended from the writing of bonds in the General Sessions Court, and further that the show cause order in respect to The Athens Bonding Company be and the same is indefinitely taken under advisement.'' The action herein amounted to no more nor less than the individual action of each judge.

It was from this order that the above mentioned petition for certiorari was filed and granted by the Circuit Judge. The Circuit Judge apparently heard no proof in support of the petition for certiorari other than the orders above referred to and bonds etc. He considered that as long as the defendants in error, bondsman and bonding company, had complied with Chapter 14 of the Tennessee Code Annotated, and particularly Title 40-1401 to 40-1412, T.C.A., there was nothing that the Sessions Judges could do to prevent the writing of criminal bonds by the defendants in error.

In a few brief words these provisions of the Code (40-1401 to 40-1412) provide in effect that one to write criminal bonds must show to the courts certain financial responsibility and then that those writing criminal bonds cannot fix cases. Some of the provisions go on as to how this financial responsibility is determined, whether or not and when investigation as to it can be made and as to other things pertaining thereto. In the instant case, as we understand the record, there is no claim of any violation of any of these statutory provisions and as we read the trial judge's opinion it is to the effect that since there is no allegation showing any violation of these statutory provisions then the courts herein were without any

authority to regulate the action of bondsmen in writing criminal bonds in their respective courts.

██ Before getting into the merits of this controversy we should dispose of a question raised in the lower courts, and raised here, that is, that the writ of certiorari was not the right method by which to bring this matter before the courts, but that mandamus was the method that should have been employed to properly get the question before the court. We have investigated this matter to some extent, giving it a good deal of thought, and have finally concluded for reasons hereinafter expressed to accept the proposition as brought into court. Of course, mandamus is employed to compel performance, when refused, of a ministerial duty, while the writ of certiorari, at the common law, and now carried in our statute under Section 27-801, T.C.A., is quite different from that of mandamus. It is more or less designated to review and examine the proceedings of lower tribunals and to ascertain their validity and to correct any errors of law that are made by these lower courts, where there has been more or less some judicial action therein. In the instant case, if we take the theory of the bondsman, that is, that any action granting or refusing bonds on behalf of the General Sessions Judges is purely a ministerial duty, if we take this theory of it, mandamus, of course, would be the proper remedy. While on the other hand, if we take the position of the General Sessions Judges, that is, that they have a discretionary and inherent power, if this theory is accepted, the certiorari then, of course, would be correct. Thus in view of the divergent views as to what was proper under the record herein we have decided to accept the petition as brought to the lower court by certiorari.

*In re Carter,* 89 U.S.App.D.C. 310, 192 F.2d 15, 18, Judge Prettyman in an able dissent had this to say (It is certainly applicable in the instant case.):

"The writing of bail bonds for pay is not an ordinary vocation the right to pursue which is a basic right and as to which the police power of a state is sharply limited. In the first place, the admission to bail is part of the operation of the trial courts. It is the placing of an accused in the custody of persons selected by him who become, so to speak, his friendly jailers. It is the substitution of one custodian for another. The surety upon the bail has power to arrest the accused. The granting of bail is governed by the Federal Rules of Criminal Procedure. (Of course, such rules have no application in our courts.) It is performed by a commissioner, judge or justice. (Of course, in this State it is performed as set forth in T.C.A., 40-1202 et seq.) Thus going bail is not an ordinary and independent vocation but is an integral part of the operation of the judicial system. In the second place, the bail bond is a contract with the Government. According to the doctrine of *Perkins v. Lukens Steel Co.,* 1940, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108, no person has a 'right' to do business with Government by contract. That doctrine is peculiarly applicable to bail contracts, because, from the very nature of the transaction, the qualification of a surety to appear upon even one bond is in large measure with judicial discretion."

■ We quote the reasoning here because it is peculiarly applicable to a situation in these State cases. The General Sessions Judges in this particular instance have all the judicial powers and rights of the Justices of the

Peace under the various and sundry sections of the Code made and provided. *Hancock v. Davidson County,* 171 Tenn. 420, 104 S.W.2d 824. Thus it is that our statutes governing appeals and accepting bail, trial of cases and things of that kind before Justices of the Peace are applicable to the Sessions Courts.

▇ Of course, the creation of the Sessions Courts some twenty-five years ago in this State grew out of a demand of the public that fee grabbing and things of that kind going on before Justices of the Peace should be stopped. Thus it was that General Sessions Courts were created and a high caliber of an individual elected by the people to govern and rule these courts. In ruling and running these Sessions Courts it is necessary for these individuals to exercise certain decorum and have certain requirements about those who work in and out of their court, very similar to that of a court of record, in order to keep this court on a high plane. This being true, the court in the absence of any statute on the subject, whether it be General Sessions Court or courts of record, has certain inherent powers and rights to see that the courts over which they preside are conducted in an honest and upright manner by those who are officers of the court or who are dealing with the court.

The Supreme Court of Oklahoma in *Logan v. Hoskins,* 85 Okl. 278, 205 P. 1095, held that the District Court had inherent power in all cases to require such bond as would adequately protect the interest of the parties. The Pennsylvania Court *In Matter of American Bank & Trust Co.,* 17 Pa.C.C. 274, 275, held that the courts of record there had inherent power to require security from persons subject to their order where the interest demanded

the protection and that this was an inherent one essential to the due administration of right and justice which the Constitution has placed beyond the possibility of legislative interference. This is the general tenor, and should be what is right in the conduct even of courts that are not courts of record to try to get it on a right and decent plane. So long as the court in the conduct of its business makes requirements of this kind and these requirements are reasonable ones, and reasonable regulations, they clearly come within the reasonable police power and inherent power of these courts. The enactment of such reasonable regulations under the police power of the legislature results in no deprivation of property without due process of law. This statement is applicable, of course, to the statutory enactment setting forth certain rules and regulations to govern criminal bondsmen. There is no reason, in the absence of a statute, why the courts may not make similar reasonable regulations. So long as these regulations of the applicant are not capricious, arbitrary or solely without basis of right, then these acts may be properly supervised by the court in its ministerial capacity as here.

You say, what is inherent power? "An authority possessed without its being derived from another; a right, ability, or faculty of doing a thing without receiving that right, ability, or faculty from another." 43 C.J.S., p. 393.

The trial judge here seemed to have the clear opinion that because of the statute (40-1401 et seq.) hereinbefore referred to, making some requirements as to these bonding companies, this was the only thing that could be required of bondsmen by the courts. We respectfully think that he is in error in this because the statute is

directory only and applicable to those things as required by these various sections of the Code. This statute does not by any stretch of the imagination attempt to cover the whole field of what is necessary for a bondsman before he is allowed to make bonds in the various courts. These statutes in no way attempt to interfere with the courts and tell them what their inherent power are or are not. It is merely saying that in such and such an instance that as far as solvency is concerned the bondsman will comply and that he must not do certain other things. This though does not attempt to take away the inherent right of the court to properly administer its affairs.

In *In re Carter,* supra, the District Court there in the majority opinion considered that these bondsmen were officers of the court to the same extent as a member of the bar was, and in supporting this proposition cited certain United States Supreme Court cases. We do not go this far, but we use this illustration in light of what this Court has very recently in *Ex Parte Chattanooga Bar Association,* 206 Tenn. 7, 330 S.W.2d 337, held unanimously that the courts of the State have inherent power to look into the question of the ethical conduct of the lawyers who are members of the bar. In other words, that this is the power of the court beyond and regardless of any statute on the question. This same reasoning applies in the instant case, and to various courts, even down to courts that aren't courts of record. The purpose is to keep their courts on a high plane.

Mr. Chief Justice Neil, writing for this Court in *Gilbreath v. Ferguson,* 195 Tenn. 528, 260 S.W.2d 276, stated the feelings of this Court in reference to the situation here under discussion. For the reasons obvious on the

face of the Gilbreath opinion those things are *obiter dicta,* but we now, when the question arises, accept and adopt each statement published in that opinion in reference to what the judges of the respective courts may do in reference to accepting bail bonds in their respective courts. Such a situation must be in an effort to raise the standard and the respect of the administration of law in these criminal cases. This in a way when it comes to the attention of the court may be corrected far easier through the discipline of bondsmen who prepare the bonds before these courts than in any other way. So long as the bondsman complies with the statutes above referred to and meets a fair and reasonable standard in the conduct of his business before these courts then there is no one going to prevent him from practicing his profession therein.

When their profession is thus treated there is no violation of the due process of law because due process of law applies to a deprivation only. What we have said above is not contrary to the holding of the Court in *Concord Casualty & Surety Co. v. United States,* 2 Cir., 1934, 69 F.2d 78, 81, 91 A.L.R. 885. Even in that case the Court held that a District Court can refuse to accept a bond executed by a company in which the Court had lost confidence. That statement can mean nothing more or less than what has been said heretofore. This case (Concord Casualty Co. etc.) discusses the power of the Federal Courts in special disciplinary proceedings to restrain a surety or indemnitor from acting in future cases and when that surety has committed some misconduct in the past. It was held that the Federal District Court was one of limited jurisdiction and under the Constitution and laws of the United States it was without jurisdiction

in these proceedings. The Court though pointed out in a concurring opinion that it would undoubtedly have the power to refuse any bonds offered by the surety until it was satisfied that its business would be conducted in a proper manner. This statement of Swan, Circuit Judge, in concurring, certainly is nothing more than what we have been saying above. This case (Concord case) concludes with the statement, "The court's judicial act of approval of a bond is not mandatory under section 6, but the statute calls for the exercise of a wise judicial discretion." Thus it is that we do not find this case in any way out of harmony with what we have said above.

Lastly, it might be argued, and probably will be argued on a petition to rehear, that there is no showing herein of why these Sessions Judges voided the right of this bonding company to execute bonds before them. In the outset we showed that this bonding company was given notice several days prior to a hearing to show cause why this should not be done. The order shows that they did have a hearing and that after hearing the proof and argument of counsel it was the unanimous decision of these five General Sessions Judges that these bonds should be terminated. Clearly under this language upon which the petition for certiorari herein was based shows on its face that there was evidence before these gentlemen prior to their revocation of this license. In the absence of this evidence in this record we must conclude that these judges were eminently justified in revoking these bonds for good cause and that it has not been done arbitrarily or capriciously, and that there is clearly no abuse of their discretion in refusing to accept these parties. We feel that these parties have had a hearing and had they wanted other courts to pass on the evidence

upon which they were suspended it was their obligation to preserve this evidence and bring it along up for us to see and not just depend upon the legal argument that they could only be bound by the statutory solvency provisions.

Thus it is, for the reasons above expressed, that the judgment of the Circuit Court is reversed and the order of the Sessions Judges above referred to reinstated.