# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### May 21, 2013 Session

## IN RE CUMBERLAND BAIL BONDING COMPANY

**Appeal from the Criminal Court for Roane County**
**No. 73CC1-2007-CR-4218      E. Eugene Eblen, Judge**

---

**No. E2012-02556-CCA-R3-CO - Filed September 3, 3013**

---

The Appellant, Cumberland Bail Bonding Company, appeals the Roane County Criminal Court's denial of its petitions to write bonds in the Criminal Courts of the Ninth Judicial District. On appeal, the Appellant argues that because it met all the necessary qualifications for bonding companies, the trial court's order withholding approval for it to write bonds should be reversed, and the case should be remanded with instructions to approve it to write bonds as requested or with instructions to implement the procedures outlined in Tennessee Code Annotated section 40-11-125 in an expedited fashion. Upon review, we reverse the judgment of the trial court and remand the case for entry of an order approving the Appellant to write bonds in the Ninth Judicial District.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Donald A. Bosch and Ann C. Short, Knoxville, Tennessee (on appeal), and Stephen T. Greer, Dunlap, Tennessee, and Andrew L. Berke, Chattanooga, Tennessee (at trial), for the Appellant, Cumberland Bail Bonding Company.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Russell Johnson, District Attorney General; and William (Bill) Reedy, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## FACTS

On April 4, 2007, the Appellant, through its owner Thomas A. Baggenstoss, filed in the Roane County Criminal Court a petition for approval to write bonds in Roane and Meigs Counties, which are located in the Ninth Judicial District. At the time, the Appellant had been approved to write bail bonds in the Twelfth Judicial District and had been doing business in that judicial district for over two years.

On May 25, 2007, following an appearance by the Appellant and Appellant's counsel in open court, the trial court entered an order stating that the Appellant had "met the qualifications required by law to be authorized to write bail bonds in and for Roane and Meigs Counties" and that the Appellant was "ready, willing and able to deposit with the Clerk of the Court the required deposit for each county in which to write bail bonds[.]" In the order, the court stated that it was taking the petition under advisement.

On March 29, 2012, the Appellant filed an amended petition in the Roane County Criminal Court for approval to write bonds in Roane, Meigs, Morgan, and Loudon Counties, all four of the counties in the Ninth Judicial District. On the same day, the Appellant filed a "Motion for Instructions" asking for guidance in reaching "a final determination" in its 2007 petition for authority to write bonds in and for Roane and Meigs Counties, given that it had "met all of the qualifications required by law and all of the requirements of this Court to write bail bonds in each county."

On September 14, 2012, the Appellant filed a Notice of Filing, which included letters of recommendation from Eric Watson, the state representative for District 22; Casey Stokes, an attorney; Ronnie "Bo" Burnett, the Marion County Sheriff; and Jim Ruth, the Bradley County Sheriff. In addition, on September 25, 2012, the Appellant filed a letter from Sarah Watkins Bledsoe, a past Loudon County Republican Party Chairperson, to the District Attorney General of the Ninth Judicial District recommending the Appellant.

Also on September 25, 2012, the District Attorney General for the Ninth Judicial District filed a response to the petitions in this case:

> The District Attorney General feels that the Ninth Judicial District, including Loudon, Meigs, Morgan and Roane Counties[,] are adequately served by a sufficient number of bail bonding companies at this point. As both a three[-]term state legislator and as a District Attorney General for over six years, I am familiar with the competition among bail bonding companies and

agents for business in the counties and districts throughout the State of Tennessee. As such, I have seen a number of problems and issues with too many companies competing for business in one county. Since the bail bonding business in Tennessee is not based on a free market economy in that bail bonding companies and their agents do not negotiate the ten percent (10%) fee that is required for writing a bond, there is no economic incentive provided by a multitude of companies working in one area. In fact, too many bonding companies end up splitting the proverbial economic pie such that unethical tactics tend to proliferate and the regulation of such requires an increasing amount of attention from the courts and the district attorney general's offices. This is not to say that Cumberland Bail Bonding Company has such a reputation.

However, with the foregoing being stated, the District Attorney's Office submits that it is entirely within the discretion of the Court as to how many bail bonding companies and which bail bonding companies are granted permission or otherwise approved for writing bonds in their respective districts. The District Attorney General, therefore, leaves it to the wisdom and discretion of the Court as to what decision is made on the within petition.

On October 15, 2012, the trial court conducted a brief hearing on the petitions. The court stated that it had reviewed the petitions and the recommendation from the District Attorney General and asked the Appellant if it had filed its financial documentation. Appellant's counsel responded that the Appellant had filed its financial documentation in every district but had not filed it with the petitions and would be happy to file it for the court. Then the following exchange occurred between the trial court and Appellant's counsel:

| [Appellant's counsel]: | . . . This is Mr. Baggenstoss as you may see from the petition he's filed–he's certified in a number of other counties. |
| --- | --- |
| The Court: | Yeah. Right now we [are] real adequate on our bonding part but I'll keep you in line. |
| [Appellant's counsel]: | Well, Your Honor– |
| The Court: | One [other company] has withdrawn their petition so that'd move you up if I put anybody in, why you'll be first now. |

| | |
|---|---|
| [Appellant's counsel]: | Your Honor, if I may–if I may approach? |
| The Court: | Certainly. |
| [Appellant's counsel]: | I'll give this to you and the General as well. |
| The Court: | Yes. |
| [Appellant's Counsel]: | As you may know the regulation of bonding companies is governed by [Code section] 40-11-125 and this has the reasons in it for . . . refusal to . . . authorize a bonding company. It basically says the Court can . . . do that for four reasons.<br><br>One is any kind of violation of . . . Chapter Three . . . he can be denied and his bonding license can be withdrawn or suspended. And that says in [subpart] "a" that if he's been guilty of [violating] any of the laws of the State relating to bail bonds, if he's had a final judgment of forfeiture [entered] against him or is guilty of professional misconduct [as described in Code section 40-11-126], those are the reasons to deny it. |
| The Court: | Yes. |
| [Appellant's counsel]: | I would submit to this Court that there has been none of those things and that under [Code section] 40-11-125 . . . he should be authorized by this Court [to write bonds]. |
| The Court: | Yes, I had already checked all those things out. He meets the qualifications[,] and if I add anybody in, why, Cumberland Bonding will be first now. |
| [Appellant's counsel]: | Okay, so are you denying it at this time. |
| The Court: | I'm just not going to add it at this time. |

| [Appellant's counsel]: | Okay. Well, I understand that Your Honor. If you are denying it[,] then I think that he is entitled to an appeal de novo to the [Court of Criminal Appeals] is why I'm asking. |
| --- | --- |
| The Court: | Well, if you want to do an appeal[,] then just put it down as a denial at this time so you can do an appeal. |
| [Appellant's counsel]: | Okay. All right. |
| The Court: | That'd be fine. |

On October 18, 2012, the trial court entered an order denying the Appellant's petitions. Specifically, it found, after reviewing the petition, amended petition, motion for instructions, district attorney's response, and entire record, that the Appellant was "qualified to write bonds under the Release from Custody and Bail Reform Act of 1978" and that it would "be the next bonding company approved to write bail bonds in the area, if the Court allow[ed] additional bondsmen."

On November 15, 2012, the Appellant filed a Statement of Financial Condition detailing its assets, liabilities, and net worth. On November 16, 2012, the Appellant filed a timely notice of appeal.

## ANALYSIS

The Appellant argues that because it met all the necessary qualifications to write bonds, the trial court's order withholding approval should be reversed, and the case should be remanded to the trial court with instructions to approve it to write bonds in the Ninth Judicial District. Alternatively, the Appellant argues that the trial court's order should be reversed and remanded with instructions that within thirty days, the trial court will conduct a hearing and either affirm that it meets all the qualifications and is approved to write bonds in the Ninth Judicial District or withhold approval and follow the directives in Code section 40-11-125(b).

Specifically, the Appellant argues that the governing statutes do not give the trial court the authority to create "an arbitrary 'waiting list' for bonding companies that meet all the qualifications to write bonds." It asserts that by creating such a list, "[t]he trial court is, in effect, judicially maintaining a type of oligopoly to which only a select group of bonding

companies belong." The Appellant also argues that "[w]hatever may be said of a trial court's inherent power regarding the making of bonds, surely that power does not extend to manipulating the economic market for bonding companies."

In response, the State concedes that the Appellant meets the minimum requirements to write bonds in criminal cases in the Ninth Judicial District but argues that the Appellant has failed to show the trial court abused its discretion in denying its petitions. It asserts, citing Taylor v. Waddey, 334 S.W.2d 733 (Tenn. 1960), that "the trial court reasonably concluded that the judicial district needs no additional bonding agents at this time to secure the court appearances of criminal defendants, and the appellant cannot show that the trial court acted abitrar[il]y and capriciously in its decision." Upon review, we reverse and remand the case for entry of an order approving the Appellant to write bonds in the Ninth Judicial District.

Contrary to the State's claim that an abuse of discretion standard applies to this case, this court must review a trial court's denial of a bondsman's application under a de novo standard of review. T.C.A. § 40-11-125(d). The trial court has full authority to determine who shall qualify as a bondsman in its court. Gilbreath v. Ferguson, 260 S.W.2d 276, 278 (Tenn. 1953). Specifically, the court has the power to inquire as to the solvency of any bondsman and to investigate the value of a bondsman's assets and liabilities. T.C.A. § 40-11-305. In addition, the court has the power to prohibit a bondsman from executing bonds until the court becomes satisfied that the bondsman has become financially solvent, and the court can impose reasonable limitations on the total liability of the bondsman's undertakings in its court. Id. § 40-11-306. Also, a trial court may prohibit a bondsman from executing bonds if that bondsman "has individually or as a corporation owner been discharged in a bankruptcy proceeding leaving unsatisfied outstanding forfeitures with any court[.]" Id. § 40-11-317(c).

We note that "a trial court has the inherent power to administer its affairs, including the right to impose reasonable regulations regarding the making of bonds." Hull v. State, 543 S.W.2d 611, 612 (Tenn. Crim. App. 1976) (citing Taylor, 334 S.W.2d at 736). "So long as these regulations [governing bondsmen] are not capricious, arbitrary or solely without basis of right, then these acts may be properly supervised by the court in its ministerial capacity[.]" Taylor, 334 S.W.2d at 736. Moreover, the statutory requirements for bondsmen "do[] not by any stretch of the imagination attempt to cover the whole field of what is necessary for a bondsman before he is allowed to make bonds in the various courts." Id. However, "[s]o long as the bondsman complies with the statutes above referred to and meets a fair and reasonable standard in the conduct of his business before these courts then there is no one going to prevent him from practicing his profession therein." Id. at 737.

Tennessee Code Annotated section 40-11-125(a) outlines the ways in which a professional bondsman's approval may be withheld, withdrawn, or suspended by the trial court:

> In addition to the requirements of part 3 of this chapter regulating professional bondsmen, approval of a professional bondsman or other surety may be withheld, withdrawn or suspended by any court if, after investigation, it appears that a bondsman:
>
> (1) Has been guilty of violating any of the laws of this state relating to bail bonds;
>
> (2) Has a final judgment of forfeiture entered against the bondsman which remains unsatisfied; or
>
> (3) Is guilty of professional misconduct as described in § 40-11-146.

T.C.A. § 40-11-125(a) (amended April 16, 2013). A court may not withhold approval of a bondsman without notifying the bondsman in writing of the action taken and of the charges resulting in the action and without providing the bondsman with the opportunity to file an answer denying the charges and to present proof at an evidentiary hearing:

> Any court withholding, withdrawing or suspending a bondsman or other surety under this section shall notify the bondsman in writing of the action taken, accompanied by a copy of the charges resulting in the court's action. If, within twenty (20) days after notice, the bail bondsman or surety files a written answer denying the charges or setting forth extenuating circumstances, the court shall call a hearing within a reasonable time for the purpose of taking testimony and evidence on any issues of fact made by the charges and answer. The court shall give notice to the bail bondsman, or to the insurer represented by the bondsman, of the time and place of the hearing. The parties shall have the right to produce witnesses, and to appear personally with or without representation by counsel. If, upon a hearing, the court determines that the bail bondsman is guilty as alleged in the charges, the court shall thereupon withhold, withdraw or suspend the bondsman from the approved list, or suspend the bondsman for a definite period of time to be fixed in the order of suspension.

Id. § 40-11-125(b).

Here, the trial court acknowledged that the Appellant was qualified to write bonds under the Bail Reform Act of 1978 but denied the Appellant's petitions because it was not approving new bondsmen in the judicial district. We begin by noting that an October 4, 1989 Attorney General Opinion, which squarely addresses this issue, states that "[t]he Legislature has vested the Circuit and Criminal courts with jurisdiction and powers conferred by [Tennessee Code Annotated section] 40-11-101, et seq., none of which authorize the limitation of the number of bail bondsmen within the courts' judicial districts." Tenn. Op. Atty. Gen., No. 89-132, 1989 WL 434624 (Oct. 4, 1989), at *2. The opinion concludes that in the absence of a specific legislative grant of authority, a trial court has no power to limit the number of bail bondsmen within its jurisdiction:

> Although [Code sections 40-11-124(a), -125(a), and -303(a)] grant circuit courts exercising criminal jurisdiction limited supervisory authority over bail bondsmen, they do not provide any authority for courts to limit the number of bondsmen in the jurisdiction. Thus, it appears a circuit court judge has no power to limit the number of bail bondsmen within its jurisdiction absent an express legislative grant of such authority.

Id. (emphasis added).

We acknowledge that "[a]lthough opinions of the Attorney General are useful in advising parties as to a recommended course of action and to avoid litigation, they are not binding authority for legal conclusions, and courts are not required or obliged to follow them." Washington Cnty. Bd. of Educ. v. MarketAmerica, Inc., 693 S.W.2d 344, 348 (Tenn. 1985); State v. Blanchard, 100 S.W.3d 226, 230 (Tenn. Crim. App. 2002) ("[O]pinions of the state attorney general are merely advisory and do not constitute legal authority binding on this Court."). However, the Tennessee Supreme Court has held that although Attorney General Opinions are not binding, they are "entitled to considerable deference." State v. Black, 897 S.W.2d 680, 683 (Tenn. 1995). Because Tennessee law does not provide sufficient guidance on this issue, we find the October 4, 1989 Attorney General Opinion helpful in determining whether the Appellant is entitled to relief in this case.

Moreover, the relevant statutes, though failing to directly address the issue on appeal, lend support to the conclusion that a trial court does not have the power to limit the number of bail bondsmen within its jurisdiction absent a legislative grant of authority. Notably, all the statutes giving the trial court the power to withhold approval to write bonds focus on the bondsman's insolvency, unprofessional conduct, violation of laws related to bail bonds, or violation of the requirements regulating professional bondsmen in part 3 of this chapter, none of which are applicable in this case. See T.C.A. §§ 40-11-125 (withholding, withdrawing, or suspending approval of bondsmen for insolvency, unprofessional conduct, violation of

laws related to bail bonds, or violation of the requirements regulating professional bondsmen in part 3 of this chapter), 40-11-126 (defining unprofessional conduct for bondsmen); 40-11-127 (allowing a district attorney general to file a motion to have a bondsman stricken from the approved list pursuant to Code section 40-11-125); 40-11-128 (disqualifying convicted felons as bondsmen); 40-11-303 (requiring bondsmen to file semiannual report of assets and liabilities); 40-11-305 (empowering the trial court to investigate a bondsmen's solvency); 40-11-306 (authorizing the trial court to prohibit bondsmen from executing bonds if the bondsmen is insolvent or failed to file semiannual reports of assets and liabilities or filed false reports); 40-11-317 (authorizing the trial court to prohibit bondsmen from executing bonds if the bondsman has been discharged in bankruptcy leaving unsatisfied outstanding forfeitures).

Furthermore, the single case in which this court affirmed the trial court's withholding of approval to write bonds for reasons other than insolvency, unprofessional conduct, violation of laws related to bail bonds, or violation of the requirements in part 3, centered on the trial court's determination that the bondsman was untrustworthy. See Kimyata Izevbizuaiyamu v. State, No. W2012-00017-CCA-R3-CD, 2012 WL 6115092, at *5-6 (Tenn. Crim. App. Dec. 10, 2012) (affirming the trial court's denial of Appellant's application to write bail bonds on the grounds that the Appellant "was unsuitable to be entrusted yet again with the privilege of writing bonds in Shelby County[,]" because the Appellant had "betrayed the trust of the court," and because the Appellant had "showed an inability to be trusted with court documents"). This scenario is also not applicable in this case. Consequently, we agree with the message in Taylor: "So long as the bondsman complies with the [relevant] statutes . . . and meets a fair and reasonable standard in the conduct of his business before these courts then there is no one going to prevent him from practicing his profession therein." Taylor, 334 S.W.2d at 737. The trial court's judgment is reversed and remanded for entry of an order approving the Appellant to write bonds in the Ninth Judicial District.

## CONCLUSION

Upon review, we reverse the judgment of the trial court and remand the case for entry of an order approving the Appellant to write bonds in the Ninth Judicial District.

_____
CAMILLE R. McMULLEN, JUDGE