IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 16, 2013

## IN RE SPARTA BAIL BONDS, a/k/a FREEDOM BAIL BONDS

**Appeal from the Criminal Court for Putnam County**
**No. 12-0966      Leon C. Burns, Jr., Judge**

**No. M2012-02619-CCA-R3-CO - Filed November 18, 2013**

The Appellant, Sparta Bail Bonds, a/k/a Freedom Bail Bonds, appeals the Putnam County Criminal Court's denial of its petition to obtain bonding privileges. The Appellant contends that the evidence did not support the trial court's denial. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

Mark E. Tribble, Cookeville, Tennessee, for the appellant, Sparta Bail Bonds, a/k/a Freedom Bail Bonds.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Randall A. York, District Attorney General; and Philip Hatch, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

FACTUAL BACKGROUND

On June 4, 2012, Sparta Bail Bonds, LLC (the Appellant company), filed a petition to obtain bonding privileges in the Thirteenth Judicial District. The two members of the Appellant company were Damon Markum and Ronnie Williams. Mr. Markum provided all of the money used as the collateral needed to operate the bonding company and had been licensed as a professional bondsman since February 2012. Mr. Williams had "eight to ten years" of experience as a professional bondsman, working exclusively for his father's bonding company, Sparta Bail Bonding.

The bonding privileges of Sparta Bail Bonding "and its agents" had been "permanently revoked" by the trial court in August 2010. The trial court found that Sparta Bail Bonding had allowed unauthorized persons to write and execute bonds, that three forfeiture bonds had not been paid by the company, that Mr. Williams's father was "financially insolvent," that Mr. Williams's father had filed inaccurate financial statements with the trial court, and that Mr. Williams's father had sold part of his interest in Sparta Bail Bonding without first seeking court approval.

Mr. Williams testified that he was merely an employee of Sparta Bail Bonding and was not involved in any of the improprieties that resulted in the revocation of Sparta Bail Bonding's bonding privileges. Mr. Williams also testified that his father was not involved in the formation of the Appellant company and would not participate in its operation. Mr. Williams testified that since August 2010, he had continued to write bail bonds for Sparta Bail Bonding in the Thirty-First Judicial District, where the company still had valid bonding privileges. Mr. Williams testified that his goal was for the Appellant company to eventually replace Sparta Bail Bonding in the Thirty-First Judicial District. It was also established that the Appellant company's office was located in Sparta Bail Bonding's former office.

The trial court concluded that Mr. Markum was "the principal owner" of the Appellant company and that he did not meet the statutory requirements to be a bonding company owner because he lacked the required two years' experience "writing bail." The trial court found that Mr. Markum seemed "to be the man who [was] behind this" and had supplied all of the money to be used as collateral for the Appellant company. The trial court also found that Mr. Williams had not submitted "any assets" to serve as collateral. The trial court denied the petition to obtain bonding privileges because Mr. Markum did not meet the statutory requirements for a bonding company owner.

ANALYSIS

The Appellant company contends that the evidence did not support the trial court's denial of its petition to obtain bonding privileges. The Appellant company argues that its petition should not have been denied based upon Mr. Markum's disqualification to be a bonding company owner because Mr. Williams met the statutory requirements for a bonding company owner. The Appellant company further argues that "it was wrongfully saddled" with the consequences from the revocation of Sparta Bail Bonding's bonding privileges. The State responds that Mr. Williams did not qualify as a bonding company owner because he had worked for a company that had its bonding privileges revoked.

Trial courts have full authority to determine who qualifies to make bonds in their courts. Gilbreath v. Ferguson, 260 S.W.2d 276, 278 (Tenn. 1953). Trial courts have "the

inherent power to administer [their] affairs, including the right to impose reasonable regulations regarding the making of bonds." Hull v. State, 543 S.W.2d 611, 612 (Tenn. Crim. App. 1976) (citing Taylor v. Waddey, 334 S.W.2d 733, 736 (Tenn. 1960)). As such, trial courts are given wide discretion in their regulation of professional bondsmen, and their actions will not be overturned absent a showing that they were arbitrary, capricious, or illegal. Taylor, 334 S.W.2d at 736. We review a trial court's denial of a petition to obtain bonding privileges under a de novo standard of review. Tenn. Code Ann. § 40-11-125(d).

Tennessee Code Annotated section 40-11-307(b) provides as follows: "Any applicant for approval as a bonding company owner shall have had two (2) years' experience writing bail in this state as a full-time qualified agent for a Tennessee professional bonding company in good standing." (Emphasis added). Here, it is undisputed that Mr. Markum did not meet the statutory requirement to be a bonding company owner because he lacked the required two years' experience "writing bail." Because the statute requires that all bonding company owners meet this requirement, the trial court did not err in denying the Appellant company's petition to obtain bonding privileges. See Debbie Bakir v. Steven Brent Massengale, No. E2009-02483-COA-R3-CV, 2010 WL 3394037, at *3 (Tenn. Ct. App. Aug. 30, 2010) (concluding that the plaintiffs could not have formed a partnership to own a bonding company with the defendant because they lacked the statutorily required two years' experience).

Furthermore, the statutory requirements do "not by any stretch of the imagination attempt to cover the whole field of what is necessary for a bondsman before he is allowed to make bonds in the various courts" and do "not attempt to take away the inherent right of the [trial] court to properly administer its affairs." Taylor, 334 S.W.2d at 736. While Mr. Williams met the basic statutory requirements for a bonding company owner, having worked for two years as a professional bondsman with a bonding company while it was in good standing, there was significant evidence to justify the trial court's denial of Mr. Williams's application for approval as a bonding company owner.

Mr. Williams's experience was exclusive to his work for his father's company, Sparta Bail Bonding. Sparta Bail Bonding, along with its agents, had its bonding privileges "permanently revoked" by the trial court. While Mr. Williams claimed that he had no knowledge of the improprieties that gave rise to the revocation, he testified that he ran the "day-to-day" operations of the company after his father became ill and that he continued to write and execute bonds in the Thirty-First Judicial District. The Appellant company's name was almost identical to Sparta Bail Bonding[1] and was to be located in the same office as

[1]In response to the trial court's concerns about the similarity in the bonding companies's names, the Appellant company arranged to do business as Freedom Bail Bonds in the Thirteenth Judicial District.

Sparta Bail Bonding. Mr. Williams also testified that it was his intent for the Appellant company to eventually take over Sparta Bail Bonding's remaining business in the Thirty-First Judicial District.

This was sufficient evidence to cause the trial court to question whether the petition was an attempt by Mr. Williams to circumvent the prior order revoking Sparta Bail Bonding's bonding privileges and to conclude that Mr. Williams was not qualified to serve as a bonding company owner. See Kimyata Izevbizuaiyamu v. State, No. W2012-00017-CCA-R3-CD, 2012 WL 6115092, at *5-6 (Tenn. Crim. App. Dec. 10, 2012) (concluding that while the appellant met the statutory requirements for a bonding company owner, the trial court was justified in denying her petition to obtain bonding privileges based upon her lack of candor and apparent untrustworthiness). Accordingly, we conclude that the trial court's denial of the Appellant company's petition to obtain bonding privileges was not arbitrary, capricious, or illegal, and affirm the judgment of the trial court.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE