IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 14, 2025 Session

## IN RE ANN BLANKENSHIP (D/B/A ANN BLANKENSHIP BONDING)

**Appeal from the Circuit Court for Decatur County**
**No. NA      J. Brent Bradberry, Judge**

_____

### No. W2024-00425-CCA-R3-CD
_____

The appellant, Ann Blankenship d/b/a Ann Blankenship Bonding, appeals her suspension from writing bonds in the Twenty-Fourth Judicial District due to her failure to comply with the applicable statutes. Based upon the record, the parties' briefs, and oral argument, we affirm that decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR. and MATTHEW J. WILSON, JJ., joined.

David W. Camp, Jackson, Tennessee, for the appellant, Ann Blankenship, doing business as Ann Blankenship Bonding.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; J. Katie Neff, Assistant Attorney General, for the appellee, State of Tennessee.

### OPINION

#### *Facts and Procedural History*

This appeal arises from allegations of the appellant's conduct in her professional capacity as a bail bondsman that are prohibited by Tennessee Code Annotated section 40-11-126. On November 9, 2023, Shelly Alexander, the owner of A Close Bonding Co., LLC, a local competitor to the appellant, submitted a complaint concerning several instances of alleged professional misconduct by the appellant. Specifically, Ms. Alexander alleged the appellant had committed misconduct by (1) failing to maintain a permanent office with appropriate signage; (2) charging a service fee in addition to bond premiums; and (3) committing unspecified actions that make it "difficult for the officials of this

County to do their sworn duty." In support of her complaint, Ms. Alexander attached an affidavit sworn by Herby Blankenship, an employee of Ms. Alexander and the estranged nephew of the appellant. Mr. Blankenship had also previously been employed by the appellant for approximately ten to twelve years. Mr. Blankenship's affidavit included additional allegations against the appellant, including (1) an instance in which the appellant solicited his client; and (2) the distribution of a "vulgar and slanderous" t-shirt design directed at Mr. Blankenship.

On November 14, 2023, the trial court "orally informed [the appellant] of the complaint and the Clerk provided [her] with a copy of the complaint." In response, the appellant submitted a letter and affidavit contesting the facts alleged in the complaint. The appellant responded that (1) as to the allegation that she lacked a statutorily required permanent business address, the appellant contended that she maintains a business address at 857 Crawford School Road that has a bench identifying her profession near the front door and additional signage; and (2) as to the allegation that she has charged a service fee on her promissory notes, the appellant contended the promissory note in question was drafted by Mr. Blankenship during his employment with her. The appellant's response also included a description of the communication between herself and a potential client, "Hugh Brian Bradley," that did not include solicitation. In addition to the response letter, the appellant submitted an affidavit which attested that she "never had any t-shirt manufactured for a gift or sale" concerning another bond company.

On February 13, 2024, the trial court held a hearing on the suspension, whereby the appellant appeared and testified.[1] Prior to hearing testimony, the trial court stated,

> [t]he Court has had verbal complaints about both Ms. Blankenship and, not really A Close Bonding in general, but Herby Blankenship . . . since I took the bench in October of '21. And many of the allegations in this – we'll call a formal complaint – were over that time frame. So, it's not something that just specifically occurred in some specific instance. But it's a series of events over time that evidently A Close Bonding felt it was appropriate for them to file something in writing for this court to see and the court to consider.

The trial court did not specify further details as to these instances or allegations.

During the hearing, the appellant testified that she has been a bail bondsman for thirty-two years and that her principal place of business is located at 857 Crawford School

---

[1] The record indicates that Mr. Blankenship and an attorney representing A Close Bonding were planning to attend the hearing originally scheduled for 11:00 a.m. The trial court changed the time of the hearing to 9:00 a.m. and did not notify Mr. Blankenship or the attorney "because they had told [the trial court] they weren't a part of this proceeding. We changed it to nine o'clock, and we conducted it."

Road, but she fluctuates between that address and a secondary place of business at 969 Crawford School Road. The appellant testified that although her business card lists her address as 857 Crawford School Road, that location was only her business mailing address. In addition, the 857 Crawford School Road building is protected from public access by a gate. The building at 969 Crawford School Road, the location with public access, has the required signage. The appellant has used both addresses as places of business since 2015.

Regarding the promissory note in which it was alleged that the appellant had been charging an improper service fee, the appellant testified that particular promissory note was drafted by Mr. Blankenship approximately 15 years ago while in her employment. She also testified that she did not know the fee was prohibited at the time Mr. Blankenship proposed it. The appellant's current promissory note does not charge a service fee.

As to the "vulgar" t-shirt, the appellant denied having any knowledge or involvement with the shirt. She stated, "the first time I ever heard of it was in the Complaint," and that she "had nothing to do with it."

Lastly, the appellant testified regarding the allegation of an improper solicitation of Mr. Blankenship's client. The appellant described a series of bonding transactions with a defendant, "Jason," that culminated in her refusal to sign a third bond on his behalf. Despite refusing to write him a bond, the appellant agreed to move the defendant's towed vehicle to help him avoid storage fees. The next day, when the appellant saw the defendant outside the Decatur County Jail, she approached him even though he was Mr. Blankenship's client. The appellant testified that she "walked outside to tell [the defendant] that the vehicle was not at the tow service" and claimed that no further solicitation occurred.

At the conclusion of the hearing, the trial court referenced a video of the alleged solicitation.[2] According to the trial court, the video, which was reviewed by the appellant, showed the appellant approach a man sitting in the parking lot of the Decatur County Jail after he had been bonded out by Mr. Blankenship. The trial court described the video as including a statement by the appellant: "If you need another bond, let me know." The trial court ended the hearing by requesting the appellant provide a copy of her current promissory note and taking the matter under advisement.

On February 27, 2023, the trial court issued an Order of Temporary Suspension against the appellant. The trial court found the appellant had (1) violated Tennessee Code Annotated section 40-11-126(6), by actively attempting to dissuade a client of A Close

_____

[2] As we will discuss further *infra*, the video was not made part of the record on appeal. However, it appears from the record that the video was reviewed by both the trial court and the appellant.

Bonding; (2) violated Tennessee Code Annotated section 40-11-126(9), by having business signage at a different address than her principal place of business and the mailing address on her business card; and (3) committed misconduct by creating and disseminating derogatory t-shirts about her competitor. Ultimately, the trial court suspended the appellant's license to write bonds for forty-five days. Though not specifically listed as a factor relied on by the trial court in reaching its decision to suspend the appellant's license, the trial court also admonished the appellant noting that it was aware of "multiple complaints from law enforcement and county officials about the conduct" of the appellant and that her actions "cast shade on professional bondman (sic) and the entire judicial system."

This timely appeal followed.

*Analysis*

The appellant appeals the forty-five-day suspension contending that the trial court erred in finding that the appellant had engaged in "unprofessional activities." Specifically, the appellant argues the trial court failed to provide a fair hearing at which the appellant could cross-examine the witnesses against her and failed to give the appellant notice of the anonymous "multiple complaints" the trial court relied upon in making its determination. The appellant also contends that the trial court's reliance upon the specific instances of conduct provided by Ms. Alexander and Mr. Blankenship was in error because the allegations contained in the complaint were hearsay, and the only evidence presented at the hearing contradicted those allegations. The State contends the trial court's determination to suspend the appellant was proper because it "appears from the record that the appellant engaged in professional misconduct." Though the evidence presented does not support the trial court's findings concerning the t-shirt, the record does support the trial court's remaining findings and decision to suspend the appellant's license for forty-five days. Accordingly, we affirm the decision of the trial court.

## I.    Due Process

The appellant first contends that the trial court failed to give full notice of the allegations against her and hold a fair hearing before depriving her of the right to write bonds, thus violating her due process rights. The Fourteenth Amendment of the U.S. Constitution and Article I, section 8 of the Tennessee Constitution provide procedural protections against the government from infringing on a citizen's protected interest without providing notice and opportunity to be heard in a "meaningful time and in a [meaningful] manner." *State v. AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d 81, 85 (Tenn. Crim App. 1998) (citing *Cleveland Bd. of Educ. v. Louderville*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed2d 494 (1985)). A due process analysis requires a two-step

inquiry of whether the appellant was deprived of a "protected interest and, if so, what process is due." *Rowe v. Board of Educ. of Chattanooga*, 938 S.W.2d 351, 354 (Tenn. 1996).

As to the case at bar, this Court has previously recognized the suspension of a bail bondsman's license to be a protected interest requiring due process protections. *See AAA Aaron's Action Agency Bail Bonds, Inc.,* 993 S.W.2d at 85. Therefore, the trial court's suspension of the appellant's right to write bail bonds is a government deprivation of her "right to engage in business and earn a livelihood." *See id.* As such, the remaining questions as to the due process claim of the appellant are whether the trial court gave adequate notice of the complaints against her and whether she was provided an opportunity to be heard in a meaningful way.

### a. Notice of Allegations Against Appellant

Due process requires "'notice reasonably calculated under all the circumstances, to apprise interested parties' of the claims of the opposing parties." *McClellan v. Board of Regents of State University*, 921 S.W.2d 684, 688 (Tenn. 1996). "The purpose of due process requirements is to notify the individual in advance in order to allow adequate preparation and reduce surprise." *AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d at 86 (citing *McClellan*, 921 S.W.2d at 688). The due process requirement of notice is also reflected in Tenn. Code Ann. § 40-11-125(b) requiring the trial court notify the bondsman in writing of the action taken against him.

Here, the record reflects the trial court notified the appellant of the allegations against her orally in court and a copy of Ms. Alexander's complaint was provided to the appellant on November 14, 2023. We find this notice to be sufficient to apprise the appellant of the allegations against her that were enumerated in the complaint submitted by Ms. Alexander and Mr. Blankenship.

The appellant further contends that she was not provided with notice of the "multiple complaints" from unnamed law enforcement or court officials which the trial court relied on in suspending her license. However, while the trial court mentioned at the hearing and in its order of suspension that it had "heard multiple complaints from law enforcement and county officials about the conduct of [appellant] in her capacity as a professional bondsman," the trial court did not base its decision on these complaints and, therefore, notice was not required. A review of the trial court's order shows that it had three numbered grounds upon which it based its decision to suspend the appellant's license – failure to properly maintain a permanent business address; soliciting business in the vicinity of a jail; and general misconduct relating to the production of a derogatory t-shirt directed at her competitor. The comments noted by the appellant are nothing more than an

admonishment by the trial court, noting that these two bonding companies have a history and warning the appellant of further misconduct. Because these comments were not the basis for the trial court's decision, no notice was required.[3]

### b. Opportunity to Be Heard

In addition to adequate notice, due process requires that the appellant be provided with an opportunity to be heard. Here, the trial court properly held a hearing at which the appellant appeared and provided testimony under oath answering the allegations of the complaint. However, the appellant contends that the hearing was inadequate, because the trial court failed to require live testimony capable of cross-examination of the appellant's accusers, Ms. Alexander and Mr. Blankenship. We disagree.

The question before this Court is whether a non-adversarial, pre-suspension hearing, such as the one provided to the appellant, provides procedurally sufficient due process. Due process is "flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). While the appellant argues a full evidentiary and adversarial hearing was due, the Supreme Court has recognized that "something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Mathews*, 424 U.S. at 343, 96 S.Ct. at 90. The Supreme Court set out in *Mathews* a series of factors to be balanced in determining the level of process owed to the appellant: (1) the private interest affected by the deprivation; (2) the risk of an erroneous deprivation of such interest in the process used, and the probable value, if any, of additional or alternative precautions; and (3) the governmental interest involved, including the burden of additional safeguards. *Mathews*, 424 U.S. at 335, 96, S.Ct. at 903.

Here, the appellant's ability to engage in private enterprise was temporarily deprived. There is no question that this property interest is protected under the Fourteenth Amendment to the United States Constitution. *See Cleveland Bd. of Educ.*, 470 U.S. at 543, 105 S.Ct. at 1494. "A professional license, issued by a State, which can be suspended or revoked only upon a showing of cause is a constitutionally protectable property interest

---

[3] While the trial court's comments in the instant case were merely an admonishment to the appellant and we recognize the trial court's inherent authority to regulate bonding companies, *see In re Bonding*, 599 S.W.3d 17, 21 (Tenn. 2020) (citing *Taylor v. Waddey,* 206 Tenn. 497, 334 S.W.2d 733 (Tenn. 1960) (trial courts have "inherent power" to adopt "reasonable regulations" governing bondsmen who appear before them)), we caution that the trial court should not base its regulatory decisions on unnamed sources or unspecified complaints.

because the holder of the license has a clear expectation that he or she will be able to continue to hold the license absent proof of culpable conduct." *Martin v. Sizemore*, 78 S.W.3d 249, 262-263 (Tenn. Crim. App. 2001) (citing *Barry v. Barchi*, 443 U.S. 55, 64 & n.11, 99 S.Ct. 2642, 2649 & n.11, 61 L.Ed.2d 365 (1968)). Therefore, the State cannot take away the appellant's license without affording her the protection of due process of law.

The second *Mathews* factor to be considered is what was the risk of erroneous deprivation of the appellant's property interest by the hearing provided by the trial court. At the pre-determination hearing in question, the appellant was represented by counsel and afforded the opportunity to testify as to the factual allegations against her. While the trial court did not require either Ms. Alexander or Mr. Blankenship to be present for cross-examination, there was no prohibition on the appellant's ability to subpoena them as witnesses. In fact, the appellant's "right to produce witnesses" is statutorily enshrined: "[T]he parties shall have the right to produce witnesses, and to appear personally with or without representation by counsel." Tenn. Code Ann. § 40-11-125(b). The procedural safeguards afforded to the appellant would have allowed the appellant to testify and subpoena and examine her accusers, she merely did not avail herself of the procedures already at her disposal. Therefore, the hearing provided by the trial court did not place her at risk of having her right to write bonds erroneously deprived.

The third factor to be considered, the government's interest and the administrative burdens if further procedural safeguards were required, also weighs in favor of finding the pre-deprivation hearing provided to the appellant to be constitutionally adequate. The government has a clear interest in an efficient administration of justice, which includes the bond process. If full evidentiary, adversarial hearings, such as the one requested by the appellant, were required, the administration of the criminal justice system would be hindered.

Given the strong interest in preserving judicial economy and the low risk of an erroneous deprivation of the appellant's interest, we conclude that the appellant's due process rights were not violated by her inability to cross-examine her accusers, especially given that she had opportunity to subpoena and examine the witnesses herself. Therefore, the hearing provided by the trial court did not violate the appellant's right to due process.

## II. Alleged Misconduct

In addition to the alleged violation of due process, the appellant also contends that the trial court erred in finding the appellant violated Tennessee Code Annotated section 40-11-126 which governs professional misconduct by a bondsman. The State argues the evidence was sufficient for the trial court to properly find the appellant guilty of

committing professional misconduct. We review the suspension of the appellant's authority to write bonds de novo. *In re Cox*, 389 S.W.3d 794, 798 (Tenn. Crim. App. 2012) (citing Tenn. Code Ann. §40-11-125(d)).

### a. Permanent Business Address

Tennessee Code Annotated section 40-11-126 enumerates a non-exhaustive list of actions considered to be misconduct when committed by a licensed bail bondsman. Under Tennessee Code Annotated section 40-11-126(9), no bondsman shall "engage in the business of a professional bondsman or surety without maintaining a permanent business office, business telephone and appropriate signage indicating that the office is a professional bail bond business." Here, the trial court found the appellant violated this provision by maintaining one address as her principal place of business where she received mail and official court correspondence and a second address with signage. The trial court found this to be a violation of the statute by interpreting the statute to require these three elements to be present in only one location. We agree with the trial court.

The statute's intent is to require a stable location for official purposes to ensure consistent and reliable service to a vulnerable population. While the statute does not prohibit a separate office, the spirit of the statute is to require one central location at which a person in need of a bond may visit and rely on that they are dealing with a professional bondsman. Here, the appellant listed a private address on her business card and placed signage at a separate, publicly accessible address. Additionally, the appellant testified that her principal place of business was located at the private address which was not accessible to the public. We find these dual business locations to be a violation of Tenn. Code Ann. § 40-11-126(9) and affirm the trial court's finding.

### b. Solicitation

The trial court also found the appellant committed professional misconduct by soliciting business in the vicinity of a jail in violation of Tennessee Code Annotated section 40-11-126(6). The section states that no bonding agent shall "[s]olicit business directly or indirectly, by active or passive means, or engage in any other conduct which may reasonably be construed as intended for the purpose of solicitation of business in any place where prisoners are confined or in any place immediately surrounding where prisoners are confined." Tenn. Code Ann. §40-11-126(6). The complaint against the appellant included an affidavit from Mr. Blankenship attesting that the appellant solicited business outside the Decatur County Jail. At the hearing, the trial court referenced a video supplied with the complaint that showed the appellant tell the defendant, "if you need another bond, let me know."

This video was neither entered into evidence at the hearing, nor was it included in the appellate record. Tennessee Rule 24 of Appellate Procedure places the burden on the appellant to ensure the record is complete for review: "[t]he appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P 24(b). Here, the appellant has failed to make sure the video that was the basis for the trial court's determination that she engaged in professional misconduct was included in the record. Without a full and complete record, this Court is precluded from considering that issue. *State v. Matthews*, 805 S.W.2d 776, 784 (Tenn. Crim. App. 1990); *see also Thompson v. State*, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). We conclude the appellant, by failing to include the video for review, has not met her burden under Tenn. R. App. P. 24(b) and, therefore, has waived this issue on appeal.

### c. General Misconduct

Lastly, the appellant contends that the trial court erred by finding that the appellant engaged in professional misconduct in the creation, and distribution of t-shirts with a derogatory image and message about "Herby." The evidence presented at the hearing, and in the record, included two screen shots submitted to the trial court and the appellant's testimony denying the allegation. The screenshots depicted the torso of an unidentified male with a t-shirt containing a derogatory message about "Herby" with text indicating that "Ann" had sold the shirt. During her testimony, Ms. Blankenship adamantly denied having any involvement in the creation or distribution of the shirt. Without further proof that the appellant was involved in the shirt's manufacture, design, or distribution, there is not sufficient evidence that she engaged in any misconduct. Therefore, we conclude that the trial court erred in finding the appellant guilty of this allegation.

Despite the trial court's erroneous finding, however, our de novo review of the record, which contains ample evidence of the appellant's other violations, supports the decision of the trial court and the imposition of a forty-five-day suspension of the appellant's license.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

s/ J. ROSS DYER
J. ROSS DYER, JUDGE

- 9 -