**In re George B. HITT, d/b/a Memphis Bonding Company.**

Court of Criminal Appeals of Tennessee, at Jackson.

Aug. 23, 1995.

Frierson M. Graves, Jr., Memphis, for Appellant, George B. Hitt, d/b/a Memphis Bonding Co.

Lenard Hackel, Memphis, for Appellee, Shelby County Criminal Court Clerk.

## OPINION

TIPTON, Judge.

In this appeal as of right, the appellant, George B. Hitt d/b/a Memphis Bonding Company, asks us to overturn the order of the

Shelby County Criminal Court, sitting en banc, denying his petition to withdraw funds on deposit with the clerk of the Shelby County Criminal Court and to apply the funds against final forfeiture judgments obtained against the appellant (hereafter Hitt) as surety for criminal defendants who violated the conditions of their release. Hitt states that two issues are involved:

(1) Does T.C.A. § 40–11–140 require that funds from a bail bondsman on deposit with the clerk must be used to pay on final forfeiture judgments so as to give the criminal court no discretion to deny the bail bondsman's request to pay the judgments from the cash deposit?

(2) May the criminal court deny the use of a bail bondsman's cash deposit with the clerk, made to secure cash bonds, to pay on final forfeiture judgments secured by the bondsman as a corporate surety?

The Shelby County Criminal Court Clerk, as the appellee, asserts that the question presented is whether the Shelby County Criminal Court has the legal authority to regulate bail bond companies that are writing bonds in the court. Regardless of how the parties before us frame the issues, we conclude that the trial court's action was appropriate.

This case arose among circumstances reflecting that Hitt and his assets were the subject of a divorce decree entered in June 1993 by the Shelby County Circuit Court in an action between Hitt and his then spouse. In addition to other cash and assets, the decree purported to award Mrs. Hitt $132,000 from Hitt's cash deposit of $225,000 (in the form of certificates of deposit) with the criminal court clerk. Also, it enjoined Hitt from writing any future cash bonds pending distribution of the existing assets.

Hitt had been providing bail bonds for criminal defendants in Shelby County since before 1990. The criminal courts in Shelby County determine who qualify to be bail bondsmen. T.C.A. § 40–11–124. Pursuant to T.C.A. § 40–11–302(c), the courts that regulate professional bondsmen are obligated to require "at a minimum" a ten percent securi-

ty for the criminal bonding activity of professional bondsmen who have not qualified as an insurance company or agent under the department of commerce and insurance. Pursuant to Rule 7.02 of the Shelby County Criminal Court, a company approved after February 4, 1991, to post appearance bonds through security may write cash bonds totalling only eight times the amount of their deposited security, but companies approved before such date, such as Hitt's, may write bonds totalling ten times the deposited amount.

Hitt petitioned the criminal court in August 1993 seeking to use his cash deposit with the criminal court clerk to pay on forfeitures occurring in both the criminal and general sessions courts. He alleged that the forfeitures, both conditional and final, totalled $54,000 and that his total bond obligation for outstanding bonds was a little less than $1,500,000. He alleged that his former wife had been awarded $132,000 of the $225,000 deposit, which left $93,000 awarded to him and available for forfeiture payments. He stated that the outstanding bond amount required him "by law" to have on deposit only $150,000. He requested that the deposited funds be used to pay forfeitures as long as the deposit did not go below the amount required to be on hand for his outstanding bonds, but in no event below $132,000.

At the September 1993 hearing, it was shown that the final forfeitures then existing in criminal court totalled approximately $25,000 and that Hitt had only about $1,114,000 in outstanding bonds that were secured by his deposit. He presented a circuit court order, relative to the divorce action, allowing him to withdraw $30,000 and he said that amount would cover the final forfeitures in both the criminal and the general sessions courts. The criminal court, en banc, took the matter under advisement.

Mrs. Hitt petitioned the criminal court requesting that she be allowed to levy execution upon the funds deposited with the clerk, noting that she had been awarded substantial sums in the divorce case. Her petition was

heard in December 1993, along with further consideration of Hitt's petition. The evidence reflected that at that time, Hitt had outstanding cash bonds in the approximate amount of $734,000 and that final forfeitures for cash bonds totalled $17,700. Conditional forfeitures for cash bonds totalled $115,000, but there was no way to know how much, if any, would become final and reduced to judgment. Other final forfeitures totalling $25,000 existed for Hitt acting as a corporate surety for appearance bonds. Also, documents placed in the record by the criminal court clerk reflect that Hitt's deposit amount reflected a steady decrease since 1991, after the divorce action was filed.

In denying both Hitt's and his former spouse's petitions, the criminal court stated in part:

> It is not mandatory that the Court allow the amount on deposit with the Clerk to be depleted to pay forfeiture thereby jeopardizing the solvency of the outstanding bail bonds but for good cause shown such depletion may be allowed.

> There has been a steady depletion of the Memphis Bonding Company monies on deposit with the Clerk from July 12, 1991, through November 17, 1993, with the amount falling from $420,000 on July 12, 1991, to $225,000 on November 17, 1993.

> Further reduction in the funds on deposit would expose the Court to a situation in which the forfeiture of a significant number of bonds would result in the inability of Memphis Bonding Company to satisfy these forfeitures.

In February 1994, Hitt filed a motion for a stay of forfeiture actions against him pending appeal in this case and alleged that as of January 21, 1994, his outstanding bonds totalled only $554,450, a substantial reduction from the amount proven at the previous hearing, and that under the ten to one ratio, only $55,445 was needed as a security deposit. He asserted that the amount in "forfeiture status" was about $26,200 and that over $169,000 was available from the deposited funds for payment. The criminal court notified Hitt that any stay should be sought from this court.[1] Finally, in the manner of post-judgment facts, Hitt attaches to his brief a July 1994 order indicating that the criminal court allowed $132,000 to be transferred to the circuit court clerk's office for the benefit of Mrs. Hitt pursuant to the divorce decree.

It is apparent that, first and foremost, Hitt does not want to pay on judgments of final forfeiture by using assets other than those on deposit with the criminal court clerk. The vehicle that he uses to claim that the deposit should be used is T.C.A. § 40–11–140(a), which provides that if a judgment of forfeiture is obtained by the state on any bail bond, "the district attorney general shall have execution issued on the judgment and delivered forthwith to the sheriff to be executed by levy on the cash deposited with the clerk of the court or on the real estate described in the deed of trust." He argues that this statute effectively forecloses the use of any other method of collection while funds remain deposited. Also, although recognizing that the statute does not apply to corporate surety bond forfeitures, Hitt asserts that the security deposit should be used to pay for them, as well. Essentially, he states that the interests of the system are met by limiting the supervising court to suspending him from doing business if any judgments remain unsatisfied.

 We disagree with Hitt's view of the limits to court supervision of criminal bail bond practices.

A trial court has full authority to determine who should be allowed to make bonds in its court. *Gilbreath v. Ferguson,* 195 Tenn. 528, 260 S.W.2d 276 (1953). Also, it is the trial court's function to regulate the professional bondsmen that execute bonds

---

1. The brief of the appellant refers to a motion to stay "filed with this Court and granted on April 13, 1994," but the only order in the record purporting to stay collection is signed by two judges of the Tennessee Court of Appeals. There is no order of transfer or other indication of how this order has reached us in this record. In fact, we doubt that it has any legal effect.

in its court, and it may impose reasonable limitations on the total liability of such bondsmen's undertakings in that court. [T.C.A. §§ 40–11–302—306]. Further, a trial court has the inherent power to administer its affairs, including the right to impose reasonable regulations regarding the making of bonds. *Taylor v. Waddey,* 206 Tenn. 497, 334 S.W.2d 733 (1960).

*Hull v. State,* 543 S.W.2d 611, 612 (Tenn. Crim.App.1976). In other words, the trial court is given wide discretion in its regulation of bail bondsmen and its actions will not be overturned absent a showing that they were arbitrary, capricious or illegal. *Taylor v. Waddey,* 206 Tenn. 497, 504, 334 S.W.2d 733, 736 (1960). Moreover, as *Taylor* notes, the fact that the legislature has enacted statutes dealing with bail bondsmen and their regulation does not in any way interfere with the inherent powers of regulation possessed by the court to act in addition to the statutes. *Id.*

■ The fact that Hitt and all his assets were subject to the divorce decree, the fact that his cash deposit reflected a steady decrease since the divorce action began, and the fact that he was not making cash bonds anymore justified the criminal court refusing to grant Hitt's petition. As long as he had outstanding cash bonds substantially greater in amount than his security deposit, the trial court had the full authority to take reasonable steps to insure that assets were available to cover his potential forfeiture liability. This would include the denial of his request to withdraw funds for payment upon existing forfeitures, especially without him showing that he was otherwise insolvent.

■ Also, we do not interpret T.C.A. § 40–11–140(a) to mandate that forfeiture judgments on cash bonds for which a bondsman has undertaken a surety obligation must be satisfied first and only from the general funds that have been deposited by the bondsman for the purpose of being allowed to make bonds, generally, in a particular court. Rather, its wording indicates a reference to the cash deposited for the particular bond that has been forfeited. In any event, it certainly does not give the bondsman, as opposed to the court, the power to control how or to which forfeitures the general deposit is to be applied.

In consideration of the foregoing and the record as a whole, we conclude that the order of the Shelby County Criminal Court, en banc, denying the application of deposited funds to existing final forfeitures for which the appellant was liable should be affirmed.

PEAY and SUMMERS, JJ., concur.