IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 12, 2016

## IN RE: A-RIVER CITY BAIL BOND, INC.

**Appeal from the Criminal Court for Shelby County**
**No. (No Number Assigned)     Lee V. Coffee, Presiding Judge**
_____

**No. W2015-01578-CCA-R3-CD – Filed December 12, 2016**
_____

The appellant, A-River City Bail Bond, Inc., appeals its suspension from writing bonds in the Thirtieth Judicial District due to its failure to comply with the local rules. The appellant argues that a local rule requiring the posting of at least $75,000 in cash or certificate of deposit with the Criminal Court Clerk does not apply to it and that the trial court failed to provide it with procedural due process when suspending its ability to write bonds. Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Ricky E. Wilkins and Sharon H. Loy, Memphis, Tennessee, for the appellant, A-River City Bail Bond, Inc..

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Counsel; Amy P. Weirich, District Attorney General; and Thomas D. Henderson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.     Facts and Procedural History

This appeal arises out of the appellant's failure to comply with the requirements of the Local Rules of Practice and Procedure for Bail Bond Companies, effective March 1, 2015, found under Rule 7 of the Rules of Practice and Procedure for the Criminal Court of Tennessee for the Thirtieth Judicial District ("Local Rule 7"). After the enactment of

these rules, the appellant received a letter dated March 16, 2015, stating, "In accordance with the New Local Rules the Judges of Criminal Court have put in place, these rules will go into effect Monday, March 23, 2015. If you are not in compliance on this day, you will be suspended from writing bonds in Shelby County." On March 23, 2015, the trial court entered an order suspending the appellant and several other bonding companies from writing bonds "[d]ue to the non-compliance of the New Local Rules for Bail Bond Companies that were effective March 1, 2015[.]" The appellant filed a written answer and motion to set aside the order on March 27, 2015.

In the appellant's written answer and motion to set aside the order, it argued that the order suspending the company for non-compliance with the new local rules did not identify which rule it failed to comply with. The appellant asserted, however, that it believed the suspension occurred because it did not post the $75,000 deposit required by Local Rule 7.03(A). According to the appellant, as written, the rule does not require those bonding companies already approved to write bonds in Shelby County to comply with the requirement. The appellant further contended the order suspending its ability to write bonds was constitutionally inadequate to satisfy due process concerns and violated Tennessee Code Annotated section 40-11-125. Finally, the appellant argued the order and amended local rules violated its liberty and property interests protected by the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 8 of the Tennessee Constitution. Due to the alleged failure of the trial court to put the bonding company on notice of the precise local rule with which it failed to comply, the appellant then raised all of the provisions of the recently-amended local rules it contended were unlawful or invalid.

The trial court initially postponed hearing the appellant's motion due to the fact that *Memphis Bonding Company, Inc. v. Criminal Court of Tennessee 30th District, et al.*, 490 S.W.3d 458 (Tenn. Ct. App. 2015) was pending before the Court of Appeals at the time. The trial court and all criminal court judges in the Thirtieth Judicial District were named defendants to the lawsuit, which sought injunctive relief and a declaration as to the constitutionality and validity of Local Rule 7. Our review of the transcript from the eventual hearing of the appellant's motion reveals that, despite the pendency of the Court of Appeals matter, after confirming with its counsel in *Memphis Bonding Company, Inc. v. Criminal Court of Tennessee 30th District, et al.* that the hearing could proceed, the trial court set the appellant's motion for hearing on May 19, 2015. May 19 was a mutually convenient date for the trial court and parties. We note that in an opinion dated November 25, 2015, the Court of Appeals held chancery court does not have subject matter jurisdiction to entertain an action for declaratory or injunctive relief regarding the validity of local rules in criminal court, and the case was remanded for dismissal of the complaint. *Memphis Bonding Co., Inc.*, 490 S.W.3d at 467.

The trial court, sitting en banc, heard the appellant's motion on May 19, 2015, as scheduled. During this hearing, the trial court confirmed that it suspended the appellant's ability to write bonds due to its failure to post a minimum of $75,000 in cash or certificate of deposit with the Criminal Court Clerk, stating:

> [The appellant] should have actual notice because I made it clear that the only reason any of those companies were being ordered to cease doing business in Shelby County was because of the failure to comply with the rule of having collateral on file . . . It had nothing to do with violations of any other local rules.

The trial court went on to state that in conversations with the appellant's attorney held prior to the hearing, counsel had been told "the only reason that this bonding company [is] being suspended [is] because of his failure to post that collateral with the Clerk's Office[.]" The trial court then recounted the history behind the amendments to Local Rule 7 and again addressed the notice given to the appellant, stating:

> This started in 2012 when Judge Craft was the Administrative Judge. It had been brought to the attention of the Criminal Court judges that some of the bonding companies felt that they were at a disadvantage, some of the bonding companies felt that some of the rules that were being applied were not being applied fairly, not being applied equally, and they asked the judges to please do something about trying to make sure that all bonding companies had a level, had an equal playing field.
>
> . . .
>
> So when Judge Craft was the Administrative Judge, he asked me to take a look at it, asked me to rewrite a proposed revision of Rule 7.
>
> I started this process in 2012, completed this process on January 1, 2013, and drafted amendments to the rule that indicated that those rules were effective on January 1, 2013. So this is how long these rules have been in this universe. This is not something anyone can say, "I am surprised by these rules and I ha[d] no idea this was coming."
>
> We submitted those rules for – proposed rule for comments in April, May of 2013, got back many, many, many comments[.]
>
> . . .

And this order was filed on November 21st, 2014. Under Tennessee Supreme Court rules, these rules could have been effective in thirty days, but, again, because of some concerns by some of my fellow Criminal Court judges, they did not want these rules effective in thirty days. They extended it with an effective date of March 1st, 2015.

The first full Monday in 2015 – and . . . I don't know whether or not [the appellant] was here. I believe he was here. On or about January 5, 2015, at the request of certain bonding companies and folks that represented those bonding companies, that said, "Judge Coffee, can we have a meeting with you so you can explain what these rules mean, when they are effective, what is required of bonding companies," and those questions were all addressed.

We answered – I answered those questions, and I had a courtroom full of folks, probably forty-five people here, including at least three lawyers. . . and I answered questions from bonding companies, from lawyers and other folks, and I made it crystal clear that these rules are effective on March 1st, 2015.

And there were some questions as to whether or not all bonding companies had to have on file with the Clerk's Office seventy-five thousand dollars ($75,000), including those pre-existing bonding companies, and I referred them to and they should have had in their possession because these were filed in November, effective March the 1st, and made it clear to everyone at this meeting that, under 7.04(F), and it's stated, restated, in these rules twice that . . . [b]onding companies approved before the effective dates of these rules shall be in compliance with this rule by the effective date of March 1st, 2015.

. . .

So these bonding companies have been on notice for over two years that these rules were changing. They've been on notice for over two years, what was expected of them. The seventy-five thousand dollars ($75,000) is an amount that has been consistent. It is an amount that, frankly, I believe is probably not sufficient to protect the citizens and to protect the administration of justice, but it is an amount that my fellow judges said, "Let's set this amount at seventy-five thousand dollars ($75,000)."

At the conclusion of the hearing, the trial court orally denied the appellant's motion and directed it to file a petition for reinstatement after complying with Rule 7.03

and paying the $100 reinstatement fee. The trial court then drafted a written order documenting its ruling and circulated it to the other criminal court judges for signature. On July 20, 2015, the trial court entered its order finding that the adoption of Local Rule 7 was a proper exercise of its authority due to the trial court's inherent authority to regulate the bondsmen who write bonds before them. According to the trial court, this authority includes the power to issue reasonable orders governing a bondsman's conduct in the writing of bail bonds. The trial court ruled that the appellant received actual notice of the local rule's mandates, including the requirement that it post a minimum $75,000 bond with the court clerk. The trial court found that actual notice occurred at the meeting held on January 5, 2015, where the requirements of Local Rule 7 were discussed. The trial court then analyzed each subpart of the local rule and found none of the requirements to be in contravention with state law, arbitrary, or unconstitutional. In explanation of its findings, the trial court stated:

> Given our responsibility to keep sacrosanct the Shelby County judicial system and all of those who come to it for redress and justice, this Court finds that [the appellant] shall remain suspended and prohibited from the privilege of writing bonds in Shelby County. [The appellant] has willfully refused to comply with Rule 7 which was effective March 1, 2015. This is the **only** bonding company which has failed to comply with this Rule. This willful land [*sic*] blatant failure has persisted for over two (2) years. [The appellant] is requesting that this company be given special treatment when all other companies, which chose to continue in the bail bonding industry, have satisfied their obligations as mandated by Rule 7 as amended.

As a result, the trial court denied the appellant's motion for reinstatement and ordered that, pursuant to Rule 7.10, the appellant "shall remain suspended unless the company complies with all the requirements of Rule 7 and is reinstated upon Order from the Court." The trial court further ordered the appellant to pay a $100 reinstatement fee and costs.

The appellant timely filed its notice of appeal on August 13, 2015, and argues: (1) the order suspending it violates Tennessee Code Annotated section 40-11-125, the Due Process Clause of the Fourteenth Amendment, and the Tennessee Constitution; (2) the trial court's two-month delay in hearing the appellant's motion to set aside the order of suspension and subsequent two-month delay in entering an order denying relief violated Tennessee Code Annotated section 40-11-125, the Due Process Clause of the Fourteenth Amendment, and the Tennessee Constitution; (3) Local Rule 7.03, as written, only pertains to persons or companies "filing a petition for approval to open a professional bail bond company in Shelby County;" (4) Local Rule 7.06(C) violates the First Amendment to the United States Constitution and is unconstitutionally vague; (5) Local Rule 7.06(D)

is unconstitutional; (6) Local Rule 7.07(C) contradicts Tennessee Code Annotated section 39-11-7154 and, as such, is invalid; (7) Local Rule 7.07(D) contradicts Tennessee Code Annotated section 40-11-315, is arbitrary, and unconstitutional; and (8) Local Rule 7.08(B) improperly and unnecessarily results in a significant additional cost to bail bond companies in Shelby County and is void for vagueness. The State contends that Local Rule 7.03 requires all bonding companies doing business in Shelby County to deposit $75,000 with the Criminal Court Clerk as security for the bonds written; the appellant received adequate notice and opportunity to be heard concerning its suspension for failure to post required security; and the appellant's remaining claims are not justiciable. We agree with the State.

## II.    Law and Analysis

### A.    Justiciability

At the outset, we conclude the trial court suspended the appellant's ability to write bonds because it failed to comply with the requirement of Local Rule 7.03 that bonding companies post a minimum of $75,000 in cash or certificate of deposit with the Criminal Court Clerk as security. Based on our review of the record, the additional requirements imposed by Local Rule 7 had no bearing on the trial court's decision to suspend the appellant. Moreover, due to the appellant's suspension for failing to comply with Local Rule 7.03, this Court does not know whether the appellant has or intends to comply with Local Rules 7.06, 7.07, and 7.08, nor what actions will be taken by the trial court if the appellant does not comply with the requirements of these subparts to Local Rule 7. The questions raised by the appellant regarding the constitutionality and validity of Local Rules 7.06, 7.07, and 7.08 are not justiciable and will not be considered by this Court. *See, e.g., State v. Rodgers,* 235 S.W.3d 92, 97 (Tenn. 2007) ("Courts may not issue advisory rulings."); *State v. Rogers*, 703 S.W.2d 166, 169 (Tenn. Crim. App. 1985) ("An appellate court will not pass on lawsuits when there is no justiciable controversy presented, or render advisory opinions on questions which are premature and contingent and may never arise in the future.") The appellant is not entitled to relief based on the alleged illegality and invalidity of Local Rules 7.06, 7.07, and 7.08.

### B.    Applicability of Local Rule 7.03

The trial court has the authority to suspend or revoke a bondsman's authority to act as a bonding agent, and this Court reviews the suspension or revocation under a de novo standard of review. Tenn. Code Ann. § 40-11-125(d); *In re: Cox*, 389 S.W.3d 794, 798 (Tenn. Crim. App. 2012). The trial court has full authority to determine who should be allowed to make bonds in its courts. *Gilbreath v. Ferguson*, 260 S.W.2d 276, 278 (Tenn. 1953). It is within the inherent power of the trial court to administer their affairs,

including the right to impose reasonable regulations regarding bail bonds. *In re Hitt*, 910 S.W.2d 900, 904 (Tenn. Crim. App. 1995). "So long as these regulations [governing bondsman] are not capricious, arbitrary or solely without basis of right, then these acts may be properly supervised by the court in its ministerial capacity." *Taylor v. Waddey*, 334 S.W.2d 733, 736 (Tenn. 1960)). The statutory requirements for bondsmen "do[] not by any stretch of the imagination attempt to cover the whole field of what is necessary for a bondsman before he is allowed to make bonds in the various courts." *Id.* Therefore, the legislature's enactment of statutes addressing bail bondsmen and their regulation does not interfere with the trial court's inherent powers of regulation in addition to the statutes. *In re Hitt*, 910 S.W.2d at 904.

Tennessee Code Annotated section 40-11-125(a) provides that a professional bondsmen's approval to write bonds may be withheld, withdrawn, or suspended if, after investigation, it appears that the bondsman:

> (1) Has been guilty of violating any of the laws of this state relating to bail bonds;
>
> (2) Has a final judgment of forfeiture entered against the bondsman which remains unsatisfied;
>
> (3) Is guilty of professional misconduct as described in § 40-11-126; or
>
> (4) If applying for approval as a professional bondsman, has been convicted in any state of the United States of two (2) or more misdemeanors which are equivalent to Tennessee Class A or Class B misdemeanors; provided, however, that the misdemeanor convictions shall have occurred within five (5) years of the date the application for approval is filed.

Tenn. Code Ann. § 40-11-125(a). If a bondsman's ability to write bonds is withheld, withdrawn, or suspended due to a violation of Tennessee Code Annotated section 40-11-125(a), then the trial court must provide the bondsman written notice and a hearing in accordance with Tennessee Code Annotated section 40-11-125(b), which states:

> (b) Any court withholding, withdrawing or suspending a bondsman or other surety under this section shall notify the bondsman in writing of the action taken, accompanied by a copy of the charges resulting in the court's action. If, within twenty (20) days after notice, the bail bondsman or surety files a written answer denying the charges or setting forth extenuating circumstances, the court shall call a hearing within a reasonable time for the purpose of taking testimony and evidence on any issues of fact made by the

- 7 -

charges and answer. The court shall give notice to the bail bondsman, or to the insurer represented by the bondsman, of the time and place of the hearing. The parties shall have the right to produce witnesses, and to appear personally with or without representation by counsel. If, upon a hearing, the court determines that the bail bondsman is guilty as alleged in the charges, the court shall thereupon withhold, withdraw or suspend the bondsman from the approved list, or suspend the bondsman for a definite period of time to be fixed in the order of suspension.

Tenn. Code Ann. § 40-11-125(b).

In addition, Tennessee Supreme Court Rule 18 authorizes the judges in each judicial district to adopt and publish local rules. These rules cannot be "inconsistent with the statutory law, the Rules of the Supreme Court, the Rules of Appellate Procedure, the Rules of Civil Procedure, the Rules of Criminal Procedure, the Rules of Juvenile Procedure, and the Rules of Evidence." Tenn. Sup. Ct. R. 18(a); *see In re Int'l Fid. Ins. Co.*, 989 S.W.2d 726, 729 (Tenn. Crim. App. 1998). The Criminal Court of Shelby County has adopted local rules, including Local Rule 7, titled "Local Rules of Practice and Procedure for Bail Bond Companies" and amended effective March 1, 2015.

Local Rule 7 governs the practice and conduct of bail bondsmen writing bonds in and transacting business before the Criminal Court of Shelby County, the General Sessions Criminal Court of Shelby County, and all other courts of record in Shelby County exercising criminal court jurisdiction. Shelby County Criminal Court Local Rule 7.01. Local Rule 7.03 requires bail bond companies to post a minimum of $75,000 with the Criminal Court Clerk in cash or certificate of deposit, stating:

**7.03 Collateral**

A.   From the effective date of these rules, any person or company filing a petition for approval to open a professional bail bond company in Shelby County is required to post a minimum of Seventy-Five Thousand Dollars ($75,000.00) in cash with the Criminal Court Clerk as security for bonds written.

B.   Said funds may also be deposited in a Certificate of Deposit in the sum of not less than Seventy-Five Thousand Dollars ($75,000.00) in the joint names of said bonding company and the Criminal Court Clerk of Shelby County, Tennessee.

C.   No real property collateral will be accepted by the Clerk, other than that property presently serving as collateral as of November 1, 2014.

D.   The bonding company must obtain prior written approval from the Court before the bonding company will be allowed to post any additional security exceeding the minimum cash deposit to increase its bonding capacity.

E.   Any bonding company approved by the Court may write total bonds in an amount equal to ten (10) times the amount of cash security posted with the Criminal Court Clerk. No bonding company shall be allowed to write any one single or blanket bond with any one (1) surety in excess of twenty (20) present of its available bonding capacity as determined by the Criminal Court Clerk on a weekly basis.

F.   Collateral posted as security with the Clerk may not be withdrawn or applied to satisfy a forfeiture judgment except upon notice to the District Attorney General and an Order of the Court.

Shelby County Criminal Court Local Rule 7.01. Bonding companies approved prior to the effective date of the amended local rules were to be in compliance by March 1, 2015. Shelby County Criminal Court Local Rule 7.11 states as follows:

### 7.11  AMENDMENTS

Bonding companies approved before the effective dates of these Rules shall be in compliance with this Rule by the effective date of **March 1, 2015**. These Rules may be amended from time to time by the Criminal Court Judges. Upon amendment, the Criminal Court Clerk shall notify all approved bonding companies in Shelby County, by certified mail, return receipt requested, or by personal delivery with a signed receipt for the same. Upon receipt of notice, all bonding companies shall comply with any said amendments.

We agree with the following assertions made by the State in its brief:

Trial courts have inherent power to administer their affairs, "including the right to impose reasonable regulations regarding the making of bonds." *Hull v. State*, 543 S.W.2d 611, 612 (Tenn. Crim. App.

- 9 -

1976)(citing *Taylor v. Waddey*, 334 S.W.2d 733 (1960)). In *Taylor v. Waddey*, the Tennessee Supreme Court considered the inherent authority of a court to regulate the actions of bondsmen writing criminal bonds before the court. The court concluded that such regulation was permissible:

> So long as the court in the conduct of its business makes requirements of this kind and these requirements are reasonable ones, and reasonable regulations, they clearly come within the reasonable police power and inherent power of these courts. . . . so long as these regulations of the applicant are not capricious, arbitrary or solely without basis of right, then these acts may be properly supervised by the court in its ministerial capacity as here.

*Taylor,* 334 S.W.2d at 736. A trial court is given wide discretion in its regulation of bail bondsmen, and its actions will not be overturned absent a showing that they were arbitrary, capricious, or illegal. *In re A Way Out Bonding*, No. M2012-00423-CCA-R3-CD, 2013 WL 2325276, at *2 (Tenn. Crim. App. May 28, 2013), *no perm. app. filed*; *In re Int'l Fid. Ins. Co.*, 989 S.W.2d 726, 729 (Tenn. Crim. App. 1998); *In re Hitt*, 910 S.W.2d 900, 904 (Tenn. Crim. App. 1995).

In the present matter, the appellant argues the plain language of Local Rule 7.03 only requires bail bond companies submitting applications March 1, 2015, or later, to post $75,000 in cash or certificate of deposit with the Criminal Court Clerk. The State disagrees and argues that pursuant to Local Rule 7.11, the requirement applies to all bonding companies practicing before courts in Shelby County with criminal jurisdiction. We agree with the State.

"[T]he promulgation of the local rules is somewhat analogous to the legislative actions and the interpretation and construction of the rules as guided by the rules concerning statutory construction." *May v. Woodlawn Memorial Park, Inc.*, No. M2001-02945-COA-R3-CV, 2002 WL 31059223, at *2 (Tenn. Ct. App. 2002). When interpreting a statute or rule, we look first to the plain language of the rule, giving the words their ordinary and plain meaning. *See generally Mills v. Fulmarque*, 360 S.W.3d 362, 368 (Tenn. 2012). When the meaning of a statute is clear, "[courts] apply the plain meaning without complicating the task" and enforce the statute as written. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011). "[S]tatues 'in pari materia' – those relating to the same subject or having common purpose – are to be construed together, and the construction of one such statute, if doubtful, may be aided by

considering the words and legislative intent indicated by the language of another statute." *Graham v. Caples,* 325 S.W.3d 578, 582 (Tenn. 2010) (internal quotations omitted). Courts must adopt the most "reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws." *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn. 1997).

After considering Local Rule 7 in its entirety, we conclude the requirement that bonding companies in Shelby County post a minimum of $75,000 in cash or certificate of deposit with the Criminal Court Clerk applies to all bonding companies practicing before courts of record in Shelby County with criminal jurisdiction and not only to those filing petitions March 1, 2015, or later. While the language of Local Rule 7.03, a subpart to Local Rule 7, could have been more clearly written, Local Rule 7.11 plainly states that "[b]onding companies approved before the effective dates of [this Rule] shall be in compliance with this Rule by the effective date of **March 1, 2015**." In order to be in compliance with all requirements of Local Rule 7, bonding companies must post a minimum of $75,000 cash or certificate of deposit with the Criminal Court Clerk. Because this requirement applies to all bonding companies practicing in Shelby County, not only those petitioning the trial court for approval before March 1, 2015, and later, this local rule is not arbitrary or capricious and, as a regulation of the bondsmen practicing before it, is appropriately within the province of the trial court. The appellant is not entitled to relief on this issue.

## C.     Due Process

The Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 8 of the Tennessee Constitution embody similar procedural protections and guarantees. *See Doe v. Norris*, 751 S.W.2d 834, 838 (Tenn. 1988). Both prevent the government from infringing upon significant property or liberty interests without first providing notice and an opportunity to be heard at a meaningful time and in a meaning manner. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Cooper v. Williamson County Bd. of Educ.*, 803 S.W.2d 200, 202 (Tenn. 1990), *cert. denied,* 500 U.S. 916 (1991). Several factors must be established, however, before these procedural safeguards are required. *See State v. AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d 81, 85 (Tenn. Crim. App. 1998).

### 1.     Protected Interest

First, before due process safeguards are required, the allegedly aggrieved party must possess a constitutionally protected liberty or property interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-78 (1972). The right to engage in a chosen business, occupation, or profession without unreasonable governmental interference or

deprivation thereof is both a liberty and property interest, protected by the due process clauses of the Fifth and Fourteenth Amendments and article I, section 8 of the Tennessee Constitution. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 543; *see also Livesay v. Tennessee Board of Examiners in Watchmaking*, 322 S.W.2d 209 (1959). The bail bonds industry is a business, albeit one that is closely regulated by the criminal courts. *State v. AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d at 85. Thus, once the court approves a petition to engage in the bail bonds business, pursuing it becomes a right, and the deprivation of that right is a judicial act that must meet the due process of law. *Id.*

Additionally, in order for due process rights to apply, there must be a deprivation of the protected business interest by the government. *See Rowe v. Board of Educ. of City of Chattanooga*, 938 S.W.2d 351, 354 (Tenn. 1996), *cert. denied,* 520 U.S. 1128 (1997) (citation omitted). In the present matter, the trial court suspended the appellant's right to write bail bonds. When doing so, it deprived the appellant of its right to engage in business and earn a livelihood. Accordingly, the appellant was entitled to notice and a hearing.

After this Court determines that due process applies, it must weigh the interests of the business and the government to determine what process is due and whether a deprivation has occurred. *Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 240 (1988); *Board of Regents of State Colleges v. Roth*, 408 U.S. at 569-570. The constitutional guarantees to due process are flexible standards based on the concepts of fairness and reasonableness. *State v. AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d at 86. With the concepts of fairness and reasonableness in mind, we analyze the notice and hearing requirements separately below.

### 2. Notice

Due process requires "notice reasonably calculated under all the circumstances, to apprise interested parties" of the claims of the opposing parties. *McClellan v. Board of Regents of State University*, 921 S.W.2d 684, 688 (Tenn. 1996) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The purpose of due process requirements is to notify the individual in advance in order to allow adequate preparation and reduce surprise. *Id.* (citing *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 14 (1978)). The notice must clearly inform the recipient of the charges and cannot be ambiguous or obscure. *See Turk v. Franklin Special School Dist.*, 640 S.W.2d 218, 220 (Tenn. 1982). To comport with these notions of fair play, the means employed should equal or exceed that which one desirous of actually informing the opposite party would employ. *Id.* (citations omitted). We have previously held that "[i]f a trial court suspends a bondsman from making bonds, the bondsman has a right to

receive notice of the action taken and a copy of the charges that brought about the suspension." *Id.* at 84.

In the case at bar, the appellant appeals the trial court's July 20, 2015 order denying its motion to set aside the March 23, 2015 order suspending the appellant's ability to write bonds "[d]ue to the non-compliance of the New Local Rules for Bail Bond Companies that were effective March 1, 2015[.]" According to the trial court, the local rules with which the appellant failed to comply were filed and available for review on November 21, 2014. The trial court then held a meeting on January 5, 2015. Local bail bondsmen were invited to and did attend this meeting. During the meeting, the attendees received copies of the amended local rules, and the trial court answered any questions the bail bondsmen had regarding the new rules. In addition, the trial court clarified that the requirement that each bail bonding company post $75,000 in cash or certificate of deposit with the court clerk applied to all bonding companies, including those approved prior to March 1, 2015. The appellant then received a letter dated March 6, 2015, notifying it that the new local rules would go into effect on Monday, March 23, 2015, and "[i]f you are not in compliance on this day, you will be suspended from writing bonds in Shelby County."

After the appellant failed to comply with Local Rule 7.03, the trial court suspended its ability to write bonds in Shelby County. While the trial court's order simply says the appellant was suspended "[d]ue to the non-compliance of the New Local Rules for Bail Bond Companies that were effective March 1, 2015[,]" in its motion to set aside the order filed March 27, 2015, the appellant states, "A-River City believes, however, that its authority to write bonds in Shelby County was suspended because it did not post Seventy-Five Thousand Dollars ($75,000.00) in cash with the Criminal Court Clerk as security for bonds written which it believes the Shelby County Criminal Courts have interpreted amended [Local Rule] 7.03(A) to require." Then, during the hearing on May 19, 2015, the appellant reiterated its belief that the trial court suspended its ability to write bonds due to its non-compliance with Local Rule 7.03. In response, the trial court confirmed this to be the reason for the suspension and recounted its prior conversations with the appellant's counsel where, prior to the hearing, the trial court informed him that the reason for the suspension was the appellant's failure to post a minimum of $75,000 in cash or certificate of deposit with the Criminal Court Clerk.

In light of the appellant's articulation of the suspected reason for the suspension in its March 27, 2015 motion, the March 23, 2015 order sufficiently apprised the appellant of the charges against it. The constitutional guarantees of due process are flexible standards based on the concepts of fairness and reasonableness. Here, the appellant was given enough notice to enable it to assert why the suspension occurred and then defend its failure to comply with Local Rule 7.03 in both its motion to set aside the order of

suspension and at the hearing of the motion on May 19, 2015. Any purported shortcomings in the March 16, 2015 letter and subsequent March 23, 2015 order were remedied by the trial court's subsequent verbal communication with the appellant's lawyer where, prior to the hearing, it notified counsel for the appellant that the reason for the suspension was the appellant's failure to comply with Local Rule 7.03. Thus, notice was constitutionally adequate.

### 3. Opportunity to be Heard

Not only does due process guarantee a person to notice, it also provides the opportunity to be heard. The opportunity to present a written or in-person argument opposing a proposed action, however, is not a fundamental due process requirement. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 546 (citation omitted). Procedural due process does not necessarily require a prior hearing. *Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. at 240; *State ex rel. Hayes v. Civil Service Com'n of Metropolitan Government of Nashville and Davidson County*, No. 01-A-01-9002-CH00061, 1990 WL 165073 at *4-5 (Tenn. App. at Nashville, Oct. 31, 1990). Instead, due process requires the provision of a hearing "at a meaningful time." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 547. A post-decision hearing will suffice as long as it is held within a reasonable time in light of the issues and interests at stake. *Id.* (citations omitted). While post-decision hearings are often sufficient, the timeliness in which one is held is of constitutional concern. *Civil Service Comm'n of Metropolitan Government of Nashville and Davidson County*, 1990 WL 165073 at *4 (citing *Brock v. Roadway Express, Inc*., 481 U.S. 252, 267 (1987). While there is a point at which an unjustified delay in completing a post-deprivation proceeding would become a constitutional violation, the significance of such a delay cannot be evaluated in a vacuum. *Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. at 242. There is no precise method by which to determine whether a delay in holding a hearing rises to the level of a constitutional violation. *State v. AAA Aaron's Action Agency Bail Bonds, Inc*., 993 S.W.2d at 86. Instead, the importance of the private interest and the harm to this interest occasioned by the delay; the government's interest and its reason for the delay; and the likelihood that the pre-hearing decision is erroneous are examined and weighed against each other. *Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. at 242.

In the case at hand, not only was the appellant entitled to constitutional due process protection, but after the appellant filed an answer within twenty days of the March 23, 2015 order, both Tennessee Code Annotated section 40-11-125(b) and Local Rule 7.10 mandated a hearing. The appellant received this hearing on May 19, 2015. The appellant argues this hearing came too late, and the trial court deprived it of due process by failing to hold the hearing within a reasonable amount of time after the suspension, failing to enter its post-hearing order within a reasonable amount of time

after the hearing, and failing to lift appellant's suspension after it submitted a $75,000 certificate of deposit with the Criminal Court Clerk. We are not persuaded by these arguments.

The record is void of documentation that the appellant complied with the July 20, 2015 order. The appellant has not provided any support for its assertion that it complied with Local Rule 7.03 and subsequently requested a lift of the suspension that the trial court denied. This issue is not properly before this Court on appeal, and the appellant is not entitled to relief on this basis.

Moreover, other than referencing a general denial of its source of livelihood, the appellant has not presented any evidence from which this Court can weigh the interests involved, so we cannot conduct a thorough balancing of the competing interests. *See State v. AAA Aaron's Action Agency Bail Bonds, Inc*., 993 S.W.2d at 87 (holding that even though the appellant bonding company was denied its source of livelihood, without evidence from which the court can weigh the interests involved, it cannot conclude a delay of sixteen days constituted an unreasonable delay). "'[I]nherent in any bureaucracy, . . . is a certain amount of inefficiency and delay, and the mere allegation of delay without an explanation of why the delay is unreasonable does not support a claim for due process.'" *Id.* (quoting *Slugocki v. United States By and Through Dept. of Labor*, 988 F.Supp. 1443, 1447 (S.D. Fla.1997)). The trial court attributed the hearing delay to uncertainty regarding the propriety of hearing a challenge to Local Rule 7 while *Memphis Bonding Company, Inc. v. Criminal Court of Tennessee 30th District, et al.* was pending in the Court of Appeals. After the trial court received reassurance from its counsel in *Memphis Bonding Company, Inc. v. Criminal Court of Tennessee 30th District, et al.*that the hearing could proceed, the trial court worked with its own schedule, as well as that of the parties, to find a mutually convenient hearing date. As of the date of the hearing, the appellant had not posted the requisite $75,000 with the Criminal Court Clerk. By the appellant's own admission, it knew the trial court suspended its ability to write bonds due to its failure to make the payment, yet during the fifty-three days that lapsed between filing its motion to set aside the order of suspension and the hearing of the motion, the appellant did not take any steps to comply with Local Rule 7.03 and seek reinstatement at the hearing. Likewise, the trial court denied the appellant's motion at the hearing on May 19, 2015, yet in the sixty-one days that lapsed between the hearing and the trial court's entry of the per curiam order denying the appellant's motion to set aside the order of suspension, the appellant made no apparent attempts to comply with Local Rule 7.03. After considering the record as a whole, rather than the delays in isolation, we cannot conclude the fifty-three day hearing delay and sixty-one day delay in entering an order constituted unreasonable delay. The appellant was afforded appropriate due process protections and is not entitled to relief on this issue.

## CONCLUSION

Based upon the record, the parties' briefs, and the foregoing analysis, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, PRESIDING JUDGE